**Peter CORRADO, a/k/a Pietro Corrado, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 12349.**

United States Court of Appeals Sixth Circuit.

Dec. 16, 1955.

Harry Kobel, Detroit, Mich., Jack Wasserman, Washington, D. C. (I. A. Capizzi, Detroit, Mich., on the brief), for appellant.

Dwight W. Hamborsky, U. S. Atty., Detroit, Mich. (Fred W. Kaess, Joseph Sureck, U. S. Immigration and Naturalization Service, Detroit, Mich., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Appellant became a naturalized citizen of the United States by an order of the United States District Court for the Eastern District of New York, entered on August 18, 1931. This is an appeal from the judgment of the United States District Court for the Eastern District of Michigan, revoking the order entered in the Eastern District of New York and canceling the certificate of naturalization issued pursuant to it. Appellant's citizenship was canceled because of fraud and illegality in its procurement.

Appellant, an Italian, came to the United States in 1921 and soon thereafter became a resident of Detroit, Michigan. On December 29, 1927, at Detroit, he declared his intention to become an American citizen. In June of 1929, he moved to Brooklyn, New York; and, on or about May 18, 1931, he applied for citizenship by petition to the United States District Court at Brooklyn, New York. On the printed application furnished him were numerous questions. This application shows that, after the question numbered 29: "Have you ever been arrested or charged with violation of any law of the United States or State or any city ordinance or traffic regulation?" was written the word "no". The application was signed by appellant above a printed certification that the statements in it were true to the best of the knowledge and belief of the applicant. The answers in writing to the questions asked in the application were not in the handwriting of appellant, but the application was signed by him.

The answer to the quoted question was false, for it was shown at the trial that, from June 25, 1923, to August 18, 1931 (the date of his naturalization), appellant had been arrested at least fifteen times and had been convicted of two misdemeanors: disturbing the peace in 1923; and frequenting a gambling place in August of 1927.

Very soon after his naturalization, Corrado returned and became a permanent resident of Detroit. Pursuant to his right under Michigan law, he formally requested the Superintendent of Police in Detroit to expunge from his record the list of his arrests, with the exception of the two misdemeanors upon which he was convicted, inasmuch as he had not been convicted on any other charge for which he had been arrested.

The attorney for appellant submitted to the Police Superintendent a record of nine arrests which, upon application, were expunged. These arrests included one for murder, which was discharged; another, two years later, for murder, which was nolle prossed; other arrests were upon charges of felonious assault; armed robbery; concealed weapons (two arrests); violation of the Dyer Act, 18 U.S.C.A. §§ 2311–2313; violation of United States Immigration laws; and he had also been arrested as a fugitive from justice.

The trial judge listed six additional arrests, which had not been expunged. These arrests were established by the Government, by evidence introduced at the trial: one for murder; four for armed robbery; and one "on investigation." The United States District Court rejected the Government's offer to prove other arrests subsequent to the date of appellant's naturalization, and denied the admission of any evidence concerning his alleged improper actions after naturalization, with two exceptions. Evidence was admitted to the effect that, while his application for citizenship was pending in Brooklyn and before it was granted, an indictment had been returned against him in Detroit wherein he was charged with the same murder for which he had been arrested on February 19, 1929, before he left Detroit to live in New York. The Government was also permitted to show that, on October 10, 1931, appellant was charged with being a fugitive from justice.

In relation to his false answer to the question as to whether he had ever been arrested, Corrado made the excuse—which was not accepted by the trial judge—that the person who filled out his application in a store office opposite the Federal Building in Brooklyn had informed him that, because he had been convicted only for misdemeanors and his other arrests had not resulted in convictions, it was proper that he should answer "no" to the question of whether or not he had ever been arrested.

The trial judge, in his opinion holding that appellant was guilty of fraud in the procurement of his citizenship, stated that he did not believe the testimony of appellant for numerous reasons, namely: his demeanor and evasion on the witness stand; his convenient memory; his obvious intelligence instead of feigned ignorance; his shifting of residence from Detroit to New York around the time of his indictment for murder at Detroit; and his making of application for citizenship in New York, evidently because of his long police record in Detroit.

We have in mind the fact that, at the time of appellant's examination in New York, the preliminary examiner had noted upon the back of the application that it was being referred to Detroit for the taking of depositions with respect to appellant during the years from March 1, 1926, to June 14, 1929, a period of more than three years, during which he had resided in Detroit immediately before going to Brooklyn, New York, at which place he had resided for a year before filing his application for citizenship. While it appears that depositions were later taken in Detroit for that period, there is no evidence in the case as to what these depositions contained.

The preliminary examiner who had questioned appellant concerning the answers in his application for citizenship testified at the trial. The purport of his testimony was that his check marks on the application indicated that Corrado had answered the questions as he desired to answer them. The examiner pointed out that the letters "NCR" which he had placed on the back of the application meant "no criminal record"; and that the letters "RE" meant "reads English." The trial judge indicated strongly that he believed the testimony of the preliminary examiner. The opinion of the trial judge on the credibility of witnesses is, of course, not reviewable on appeal.

The brunt of appellant's complaints on this appeal is that, unless the Government could show that he would have been

denied citizenship on the unproven charges made in the warrants of arrest, his citizenship should not be canceled now for his deception in the statement that he had never been arrested, especially in view of the fact that his only convictions were for misdemeanors, or minor offenses. He throws in the proposition that fraudulent procurement of naturalization must be established by clear and convincing evidence, which, he says, has not been done in this case. Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796; Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500. Appellant stresses as authority United States v. Kessler, 3 Cir., 213 F.2d 53, wherein it was held that an applicant's denial in her petition for naturalization that she had ever been arrested was not ground for cancellation of her naturalization certificate, where the Government stated that she had been arrested 17 times. The facts were, however, that all seventeen of her arrests had been illegal and invalid, inasmuch as the activity for which she was arrested consisted merely of peaceful picketing. She stated that she had answered "no" to the question concerning her arrests for the reason that she had committed no crime, had done nothing wrong, had no intention of lying; and that she did not understand the purport of the question at the time she answered it. The Kessler case presented a very different situation on the whole from that in the case at bar, where appellant had been charged with such grave offenses as murder and armed robbery. He could not reasonably have thought that the Government would not be interested in investigating the facts concerning such arrests.

A later case from the Third Circuit, United States v. Anastasio, 226 F.2d 912, decided September 19, 1955, and cited by appellant, is not in point for the reason that, there, as conceded by appellant in its supplemental brief, the Government was fully aware of appellant Anastasio's arrest record prior to his naturalization. In an earlier case, United States v. Saracino, 43 F.2d 76, the Court of Appeals for the Third Circuit reversed the United States District Judge for refusing to cancel a certificate of naturalization, where the applicant had denied that he had been arrested and convicted for assault and battery with intent to kill, prior to his naturalization. The court directed that the naturalization certificate be canceled for the fraud of the applicant.

In United States v. Accardo, D.C.N.J., 113 F.Supp. 783, the United States District Court revoked naturalization, for the reason that false statements and concealment of material facts by the alien in relation to his criminal record justified revocation of his naturalization, on the ground of fraud, or on the ground that the order and certificate of naturalization were illegally procured. The United States Court of Appeals affirmed on the "very full and thoroughly considered opinion" of the district judge. United States v. Accardo, 3 Cir., 1953, 208 F.2d 632.

Denaturalization for fraud and illegality in the procurement of citizenship is provided for in section 338(a) of the Nationality Act of 1940. Admittedly, a high standard of proof is required of the Government in a denaturalization case. To successfully attack a naturalization judgment, fraud upon the part of the naturalized citizen in procuring his naturalization must be proved by clear and convincing evidence. In Knauer v. United States, 328 U.S. 654, 66 S. Ct. 1304, 90 L.Ed. 1500, it is made plain that an appellate court must observe Civil Procedure Rule 52(a), 28 U.S.C.A., which requires that due regard be given to the determination by the trial judge of the credibility of witnesses. The trial judge here stated clearly that he did not believe the testimony of appellant. He stated his belief to be that appellant "deliberately falsified his position with the intent of misleading the examiner"; and that these false statements were material to the issue. The trial judge expressly

found that the Government had relied upon the appellant's misrepresentation concerning the material matter of his arrests.

Upon analysis, the issue is not whether naturalization would have been denied appellant had he revealed his numerous arrests, but whether, by his false answers, the Government was denied the opportunity of investigating the moral character of appellant and the facts relating to his eligibility for citizenship. How could any Government official or witness say whether or not citizenship would have been denied appellant from an investigation of the various causes of his arrest, when no opportunity for investigation was afforded? His false statement upon the material matter in actuality caused no investigation to be made. To be awarded citizenship in the United States exacts the highest standard of rectitude. Our Government should be afforded full opportunity for investigation of the moral character and fitness of an alien who seeks to be vested with all the rights, privileges and immunities of a natural born citizen of the United States. Where fraud has been practiced by the alien in procuring citizenship, it is not required that the Government in a denaturalization proceeding should meet the standard necessary for conviction in a criminal case. It will suffice to show that the applicant lied concerning a material fact which, if revealed, might have prevented his acquisition of citizenship.

In three denaturalization proceedings, heard together on appeal to this court from the Eastern District of Michigan, we affirmed the respective judgments of District Judges Levin, Thornton and Picard: all revoking naturalization. Sweet v. United States (Chomiak v. United States, and Charnawola v. United States) 6 Cir., 211 F.2d 118, 119. In the Sweet case, Judge Levin said that the "testimony left no doubt that the defendant had concealed his history of Communist Party membership from the naturalization authorities and had thereby thwarted inquiry into his eligibility for naturalization." In the Chomiak case, Judge Thornton found convincing evidence that the denaturalized defendant had been a member of the Communist Party and, therefore, ineligible for citizenship; and that the defendant had procured his naturalization illegally. In the Charnowola case, Judge Picard found that the defendant in naturalization proceedings had not truthfully answered the question asked by the examiner as to whether he had ever been a Communist and, therefore, had obtained citizenship by fraud. This court stated in its per curiam opinion that the findings of fact of the judge in each of the cases were supported by substantial evidence and were certainly not clearly erroneous; and that the conclusions of law in each case were based upon logically correct reasoning, supported by highest authority.

In United States ex rel. Volpe v. Smith, 7 Cir., 62 F.2d 808, 812, where *habeas corpus* was denied in a deportation proceeding, Judge Evan Evans said: "What the officer would have discovered, or might have discovered, had the inspection not been thwarted is beside the question. The inspection contemplated was defeated. In legal effect, there was no inspection." The same reasoning applies here.

In Stevens v. United States, 7 Cir., 190 F.2d 880, 881 Chief Judge Major said: "We have no doubt but that a false statement knowingly made by an applicant for naturalization in the course of such proceeding would afford a proper basis for denying the application, and it is immaterial that the false statement knowingly made concerned violations which occurred previous to the five-year period." Cf. United States v. Etheridge, D.C.Or., 41 F.2d 762.

Upon the facts revealed in the record, heretofore outlined, and upon the basis of the foregoing reasoning and authorities, the judgment of the United States District Court is affirmed.