**UNITED STATES of America,**
**Plaintiff,**

v.

**John ODDO, also known as Giovanni Oddo, John Addo, and as Johnny Bath Beach, Defendant.**

**Civ. A. No. 17757.**

United States District Court
E. D. New York.

March 6, 1962.

**900**

Joseph P. Hoey, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Lawrence J. Galardi, Peter H. Ruvolo, Asst. U. S. Attys., Brooklyn, N. Y., of counsel, for plaintiff.

Maurice Edelbaum, New York City, for defendant.

BRUCHHAUSEN, Chief Judge.

In this proceeding, the plaintiff, the Government pursuant to statute seeks the cancellation of certificate of naturalization No. 3487544, issued to the defendant by this Court on December 1, 1931. The plaintiff alleges that the defendant had been arrested prior to his naturalization and that he, during the course of the naturalization proceedings, falsely denied and concealed that he had been arrested or charged with the violation of any law of the United States or of any State or of any City ordinance or traffic regulation.

The question is whether the United States of America sustained its burden in establishing that the defendant procured United States citizenship fraudulently and illegally.

The plaintiff's burden in this proceeding is a heavy one and can be sustained only if the record contains clear, unequivocal, and convincing evidence that fraud and illegality was committed by the defendant in procuring his citizenship. Schneiderman v. United States, 1943, 320 U.S. 118, 158, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; United States v. Anastasio, 3 Cir., 1955, 226 F.2d 912, certiorari denied, 1956, 351 U.S. 931, 76 S. Ct. 787, 100 L.Ed. 1460.

The record shows that on October 30, 1930, the defendant John Oddo completed an instrument which was his "Application For A Certificate of Arrival and Preliminary Form For Petition For Citizenship." It was signed by him and subsequently filed with the Immigration and Naturalization Service. It was received in evidence. Question No. 29 on that application which read, "Have you ever been arrested or charged with violation of any law of the United States, or any State, or any City ordinance or traffic regulation?" was answered in the negative by the defendant. Furthermore, on four separate occasions during the naturalization proceeding the defendant denied any prior arrests.

At the trial, testimony of arresting officers together with official documents clearly identified the defendant as the person arrested. Identification was established through live testimony, official records of the New York City Police Department and memorandums of the police officers kept in the regular course of business. Special Agent Lyndon Shaneyfeld, a handwriting expert, testified that the signature of this defendant and the one of John Oddo referred to in several of the Government's exhibits are in his opinion those of the same individual. The evidence is overwhelming that this defendant and the John Oddo who was arrested prior to December 1, 1931 are the same person. The arrests among others included vagrancy in January 1931, assault and robbery with a gun in August 1931, violation of § 722, subd. 11 of the Penal Law in October 1931, homicide in July 1930, burglary in June 1927 and vagrancy in April 1923.

The Court has carefully analyzed the entire record and finds that the Government has adequately met the heavy burden imposed upon it. It is clearly established that this defendant deliberately concealed his criminal record and thereby committed a fraud upon the Government which supports the revocation of citizenship. United States v. Accardo, D.C.N.J., 113 F.Supp. 783, af-

firmed per curiam, 3 Cir., 208 F.2d 632, certiorari denied, 1954, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098; Corrado v. United States, 6 Cir., 1955, 227 F.2d 780.

The defendant contends that the alleged concealment did not constitute "concealment of a material fact" and that he should have been permitted to explore the issue of "the totality of the circumstances" to establish that the arrest history was "of extremely slight consequences" in that the arrests were made on mere suspicion and speculation. He further claims that several of the arrests were of a picayune nature and that even if disclosed they would not have been a bar to citizenship. A like contention was clearly rejected in United States v. Montalbano (United States v. Genovese), 3 Cir., 236 F.2d 757, 759, certiorari denied 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244, wherein the Court held:

> " * * * The theory seems to be that one may deliberately engage in a falsehood concerning required facts during naturalization proceedings without fear of consequences so long as the truth, had it been revealed, would not have resulted in refusal of citizenship. The proposition has a built-in rebuttal. Mere recital of it bares its absurdity. If the government thinks it important enough to ask a question which it has authority to ask, the answer cannot be considered immaterial and meaningless. That the answer may not lead to a refusal of citizenship is not the only consideration. The government is entitled to know all the facts which it requires."

Furthermore, the Court agreed with the decision in Corrado v. United States, 6 Cir., 227 F.2d 780. In that case the Court held at page 784:

> "Upon analysis, the issue is not whether naturalization would have been denied appellant had he revealed his numerous arrests, but whether, by his false answers, the Government was denied the opportunity of investigating the moral character of appellant and the facts relating to his eligibility for citizenship. How could any Government official or witness say whether or not citizenship would have been denied appellant from an investigation of the various causes of his arrest, when no opportunity for investigation was afforded? His false statement upon the material matter in actuality caused no investigation to be made. To be awarded citizenship in the United States exacts the highest standard of rectitude. Our Government should be afforded full opportunity for investigation of the moral character and fitness of an alien who seeks to be vested with all the rights, privileges and immunities of a natural born citizen of the United States. Where fraud has been practiced by the alien in procuring citizenship, it is not required that the Government in a denaturalization proceeding should meet the standard necessary for conviction in a criminal case. It will suffice to show that the applicant lied concerning a material fact which, if revealed, might have prevented his acquisition of citizenship."

The defendant relies heavily upon United States v. Kessler, 3 Cir., 1954, 213 F.2d 53. This case does not aid the defendant. Therein the Court concluded that there had not been an untruthful answer given to the question concerning arrests, and hence no fraud had been committed.

The defendant also stresses Cufari v. United States, 1 Cir., 217 F.2d 404 and Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120. These cases are distinguishable and have no bearing in this present case.

▇ It is well settled that there is no time bar, nor is laches a defense against the Government in instituting denaturalization proceedings.

▇ The failure to disclose the arrests was a failure to perform a duty which the defendant owed to the Court.

The Court because of non-disclosure granted the defendant his certificate of naturalization without investigating his criminal background. This non-disclosure was a fraud practiced upon the Court and the certificate so procured must be cancelled, and the prayer of the complaint is granted. The defendant's motions upon which decision was reserved, are denied.

Settle findings and decree on notice.