UNITED STATES of America,
Plaintiff-Appellee,

v.

John ODDO, also known as Giovanni Oddo, John Addo, and as Johnny Bath Beach, Defendant-Appellant.

No. 205, Docket 27634.

United States Court of Appeals Second Circuit.

Argued Jan. 21, 1963.

Decided Feb. 26, 1963.

Jerome C. Ditore, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, on the brief), for plaintiff-appellee.

Maurice Edelbaum, New York City, for defendant-appellant.

Before FRIENDLY, SMITH and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by John Oddo from a decree of the United States District Court for the Eastern District of New

York, Bruchhausen, J., which revoked and set aside the order admitting him to citizenship entered by that court on December 1, 1931. The decision is reported at 202 F.Supp. 899 (E.D.N.Y.1962).

The Government brought this proceeding on June 21, 1957, pursuant to § 340 (a) of the Immigration and Nationality Act of 1952, which authorizes denaturalization when it appears that the certificate of naturalization was "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). It was the Government's contention that during the course of his naturalization proceedings Oddo concealed a material fact in swearing under oath that he had never been arrested or charged with the violation of any law when, in fact, he knew that he had been arrested a number of times prior to the date of his naturalization. The District Court sustained this contention, holding that the Government had "clearly established that this defendant deliberately concealed his criminal record and thereby committed a fraud upon the Government which supports the revocation of citizenship" 202 F.Supp. at 900. We are asked to review that decision.

■■ The right to acquire American citizenship is a precious one. Once acquired, the loss of citizenship can have severe and unsettling consequences. For this reason, the Government properly "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." Costello v. United States, 365 U.S. 265, 269, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). The evidence justifying divestment must be "clear, unequivocal, and convincing" and not leave "the issue * * * in doubt." Schneiderman v. United States, 320 U.S. 118, 125, 158, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). See Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L. Ed.2d 120 (1960); Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944). A standard less exacting would be inconsistent with the importance of the right at stake. We have examined the District Court record in light of this standard. Because we have concluded that the Government adequately met its demanding burden of proof, the judgment below must be affirmed.

The appellant Oddo was born in Palermo, Italy, in 1903 and entered the United States in 1907. In 1926 he filed a Declaration of Intention, seeking American citizenship, and on August 3, 1931, was examined orally by both a preliminary examiner and a designated examiner of the Immigration and Naturalization Service. His petition for naturalization was granted and appellant was naturalized on December 1, 1931.

At the hearing in the District Court, the Government introduced evidence that Oddo had a record of arrests for the years immediately preceding his naturalization. The record included arrests upon charges of burglary in 1927, disorderly conduct in 1928 and 1929, homicide in 1930, vagrancy in 1931, assault and robbery in 1931, and violation of an illegal occupation statute in 1931. Oddo did not take the stand or offer any evidence of his own. He does not seriously dispute on appeal, as he could not, that the Government's evidence was sufficient to establish the existence of his arrest record. Nor does he dispute the general principle, as again he could not, that the failure to disclose a record of arrests during naturalization proceedings can constitute concealment of a material fact that will justify a decree of denaturalization. United States v. Montalbano, 236 F.2d 757 (3 Cir.), cert. denied, Genovese v. United States, 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244 (1956); Corrado v. United States, 227 F.2d 780 (6 Cir., 1955), cert. denied, 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455 (1956); United States v. Accardo, 113 F.Supp. 783 (D.C.N.J.), affirmed per curiam, 208 F.2d 632 (3 Cir., 1953), cert. denied, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954). What Oddo does dispute is the District Court's conclusion that the Government adequately proved the fact of concealment. We find this argument without merit.

The Government introduced into evidence the Application for a Certificate of Arrival and Preliminary Form for Petition for Citizenship which Oddo had completed and signed. In response to Question 29, which read, "Have you ever been arrested or charged with violation of any law of the United States, or any State, or any City ordinance or traffic regulation?", Oddo answered "No". He made that statement and signed the form despite the fact that it contained the sentence, "I certify that all these statements made by me in this application and form are true to the best of my knowledge and belief." In the absence of an offer of any mitigating or explanatory evidence, the District Court was free to conclude that Oddo's act of signing his name to this form constituted concealment of the record of arrests which the Government had already proved.

To strengthen its case on the issue of concealment, the Government introduced evidence that Oddo twice denied under oath—when interviewed by the preliminary examiner and when interviewed by the designated examiner— that he had ever been arrested. Because both the preliminary examiner and the designated examiner were deceased, the Government relied upon the testimony of a former employee of the Immigration and Naturalization Service to establish the customary practices and procedures employed in 1931 at the office which processed Oddo's petition for naturalization. His testimony was that the existence of certain checkmarks and initials on Oddo's Preliminary Form indicated that both examiners, having placed Oddo under oath, had orally asked him each of the questions on the form, including Question 29, and had received the same answer as the one that he had given in writing. Testimony as to custom and practice is admissible as circumstantial evidence, subject to the usual condition that its probative value outweigh any possible prejudicial impact. McCormick on Evidence § 162 (1954); I Wigmore on Evidence, §§ 92–93 (3d ed. 1940). No error was committed in admitting the testimony in the present case.[1]

Appellant advances two arguments which seek to mitigate the significance of his failure to disclose his record of arrests. The first, based upon the *in banc* decision of the Court of Appeals for the Third Circuit in United States v. Kessler, 213 F.2d 53 (3 Cir., 1954), is that the duty of an applicant for naturalization to disclose his record of arrests does not include an obligation to disclose "false arrests." Although the Kessler case so held, it did so in a factual situation importantly different from the present. The applicant in that case had been arrested seventeen times for obstructing the highway, a crime "unknown to the law of Pennsylvania," 213 F.2d at 56, and had been discharged each time by the same magistrate who had each time informed her "that she had committed no crime cognizable at law." Id. at 58. These circumstances were held to preclude a finding that the applicant had denied her record of arrests with knowledge that her denial was false and in a willful and deliberate attempt to deceive the Government. Assuming in appellant's favor that Kessler was correctly decided, Oddo's assertion that his arrests were either of a trivial nature or the result of arbitrary action by the police does not bring him within its rationale; he has presented no evidence that he was arrested for crimes which do not exist.

1. Cufari v. United States, 217 F.2d 404 (1 Cir., 1954), much relied upon by appellant, is not to the contrary. The reliability and probative value of the evidence of interviewing custom and practice in that case was considerably less than that of the evidence in the present case since the printed Preliminary Form requiring written answers from the alien was not in use at the time and "inquiry about arrests in the course of the naturalization process was not required either by statute or departmental regulation." Id. at 409.

Appellant's second argument, based upon Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), is that the failure to disclose a record of arrests in naturalization proceedings is not by itself an automatic disqualification when an inquiry into the "totality of the circumstances surrounding the offenses charged makes them of extremely slight consequence," 364 U.S. at 354, 81 S.Ct. at 150, so far as their materiality to any ground of disqualification is concerned. The applicant in Chaunt failed to disclose three arrests which had occurred ten to eleven years before he was naturalized. In commenting on this failure, the Court said:

"Acquisition of American citizenship is a solemn affair. Full and truthful response to all relevant questions required by the naturalization procedure is, of course, to be exacted, and temporizing with the truth must be vigorously discouraged. Failure to give frank, honest, and unequivocal answers to the court when one seeks naturalization is a serious matter. Complete replies are essential so that the qualifications of the applicant or his lack of them may be ascertained. Suppressed or concealed facts, if known, might in and of themselves justify denial of citizenship. Or disclosure of the true facts might have led to the discovery of other facts which would justify denial of citizenship." 364 U.S. at 352–353, 81 S.Ct. at 149.

But the Court nevertheless refused on the facts before it to sanction denaturalization. It noted that the "arrests were made some years prior to the critical five-year period" during which the statute requires that the applicant behave as a person of good moral character, and that they did not involve moral turpitude or fraudulent conduct, id. at 353, 81 S.Ct. at 149; "had they involved conduct which even peripherally touched types of activity which might disqualify one from citizenship, a different case would be presented." Id. at 354, 81 S.Ct. at 150. The facts in Chaunt are distinguishable from those in the present case. Although some of the arrests which Oddo was charged with concealing did not occur during "the critical five-year period," at least seven of them did. Moreover, Oddo's arrests involved charges, e. g., homicide and assault and robbery, which cannot be deemed irrelevant to the statutory qualifications for citizenship.

Failure to disclose a record of prior arrests, even though none of those arrests by itself would be a sufficient ground for denial of naturalization, closes to the Government an avenue of enquiry which might conceivably lead to collateral information of greater relevance. United States v. Montalbano, 236 F.2d 757 (3 Cir.), cert. denied, 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244 (1956); Corrado v. United States, 227 F.2d 780, (6 Cir., 1955), cert. denied, 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455 (1956). As the Court said in Chaunt, "An arrest, though by no means probative of any guilt or wrongdoing, is sufficiently significant as an episode in a man's life that it may often be material at least to further enquiry." 364 U.S. at 354, 81 S.Ct. at 150. Oddo denied the Government the opportunity to make that enquiry.

Finally, Oddo contends that the decision of the United States Supreme Court in Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), "at least provisionally, opened the door to the assertion of the defense of laches in denaturalization proceedings" and that that defense should be deemed to bar the Government from prevailing in the present proceeding. The Court in Costello made reference to the traditional rule that laches is not a defense against the sovereign; it also noted that although no cases in the Supreme Court had specifically considered the question of the applicability of laches in a denaturalization proceeding, the lower federal courts had consistently held "that delay which might support a defense of laches in ordinary equitable proceedings between private litigants will not bar a denaturalization proceeding brought by

the Government." Id. at 281, 81 S.Ct. at 542. Nevertheless, the Court went on to "assume the applicability of laches" to the denaturalization proceeding before it and to hold on the merits that the defendant had failed to prove that he had been prejudiced in any relevant way by the Government's alleged lack of diligence in bringing the revocation proceeding. Id. at 282, 81 S.Ct. at 543.

This disposition in Costello lends some support to Oddo's position; it is arguable that the case may be regarded as standing for the proposition that the Supreme Court has not foreclosed the possibility that laches may apply against the Government in a denaturalization proceeding. But it is well to remember, first, that Costello was premised on an argumentative assumption that was to be rejected on the facts, and, second, that "Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud." 365 U.S. at 283, 81 S.Ct. at 543. In the absence of a more forthright directive from either the Supreme Court or Congress and in the presence of the consistent current of federal court rulings to the contrary, e. g., United States v. Marino, 27 F.Supp. 155 (S.D.N.Y.1939); United States v. Parisi, 24 F.Supp. 414 (D.Md.1938); United States v. Ali, 7 F.2d 728 (E.D.Mich.1925), the most favorable view that can be taken from appellant's standpoint is that the applicability of laches has not been foreclosed.

■ We do not feel the need to resolve that question here, however, because, as in Costello, even assuming the doctrine of laches to be applicable, Oddo cannot bring himself within its requirements. Those requirements are proof of lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. The decision in Costello makes clear that the mere lapse of time, by itself, will not suffice to demonstrate the prejudice of which the doctrine speaks. To make operative the defense of laches, the lapse of time must bring with it actual and demonstrable prejudice. It is no more than speculation in the present case that the Government's delay adversely affected Oddo; the quality of the Government's proof of fraudulent concealment renders remote the possibility that Oddo could have rebutted it more effectively if required to do so at an earlier date, and Oddo offered no evidence of his own to substantiate such a possibility. Indeed, since the Government bore the burden of proof, the lapse of time may have been more prejudicial to its case than to Oddo's.

Affirmed.