**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Anton BIMBA, also known as Anthony Bimba, and as Tony Bimba,**
**Defendant.**

**No. 63C1328.**

United States District Court
E. D. New York.

Sept. 30, 1964.

Ira Gollobin and Blanch Freedman, New York City, for plaintiff,

Joseph P. Hoey, U. S. Atty., Eastern District of New York, Peter H. Ruvolo, Asst. U. S. Atty., of counsel, for defendant.

ZAVATT, Chief Judge.

This is a proceeding, pursuant to Section 340 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1451(a),[1] to: (1) revoke and set aside the order of the Supreme Court of the State of New York, County of Queens, dated April 1, 1927, which admitted the defendant to citizenship and (2) to cancel the Certificate of Naturalization, No. 2489530, issued pursuant thereto. The case is now before this court on defendant's motion, pursuant to Rule 12(b) (1) and (6) of the Federal Rules of Civil Procedure, to dismiss the complaint upon the grounds that the court lacks jurisdiction over the subject matter and that the complaint fails to state a claim upon which relief can be granted. An additional contention, i. e., that section 340 (a) is unconstitutional in that it offends Article I, Section 8, Clause 4 of the Constitution of the United States and the Fourteenth Amendment thereto, was not advanced upon the argument of the motion. In any event, this court regards the constitutionality of such legislation to have been conclusively determined by the Supreme Court in Bindczyck v. Finucane, 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100 (1951) and Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946). See also, United States v. Costello, 275 F.2d 355 (2d Cir. 1960), aff'd, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed. 2d 551 (1961); United States v. Minerich, 250 F.2d 721 (7th Cir. 1957); United States v. Riela, 215 F.Supp. 914 (D.N.J.1963).

Defendant's jurisdictional argument is based upon his contention that the complaint is not supported by a sufficient and adequate affidavit showing good cause as is required by section 340(a). The allegation that the complaint does not state a claim against the defendant is predicated upon the following grounds: (1) that the allegations contained therein, if proven would be insufficient to secure a revocation of citizenship under the test established by the Supreme Court of the United States in Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); that a similar result would follow because (2) the Government has failed to allege in the complaint and affidavit that defendant's arrest on the charge of "Blasphemy" and his arrest and conviction for "Inciting Overthrow of Government" [of the Commonwealth of Massachusetts] were lawful; (3) the Government has failed to allege that the defendant has committed a legal wrong; and (4) the Government, as plaintiff, has failed to allege that it has suffered a legal injury as a result of defendant's actions. For the reasons hereinafter stated, the court deems each of these contentions to be without merit and must deny defendant's motion to dismiss the complaint.

---

1. "§ 1451. Revocation of naturalization—Concealment of material evidence; refusal to testify

"(a) It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 1421 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively * * *."

On a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the factual allegations of the complaint, but not the legal conclusions to be drawn therefrom, are deemed admitted. Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646 (1938); Haley v. Childers, 314 F.2d 610 (8th Cir. 1963); Hess v. Petrillo, 259 F.2d 735 (7th Cir.), cert. denied, 359 U.S. 954, 79 S.Ct. 743, 3 L.Ed.2d 761 (1958); Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957); McGuire v. Todd, 198 F.2d 60 (5th Cir.), cert. denied, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649 (1952). The following facts, therefore, are admitted for the purposes of this motion: On December 9, 1926, the defendant filed a petition for naturalization in the Supreme Court of the State of New York at Long Island City, New York. In his preliminary examination before a United States naturalization examiner, at the time of the filing of said petition, the defendant alleged under oath that he had never been arrested or charged with the violation of any law or convicted of any crime. In fact, however, the defendant had been arrested on or about February 3, 1926 (ten months prior to his sworn denial) and charged with the commission of two crimes at Brockton, Massachusetts, to wit: "Blasphemy" and "Inciting Overthrow of Government" [of the Commonwealth of Massachusetts], the latter being a violation of the General Laws of Massachusetts, Ch. 264, Sec. 11. A certified copy of the records of the District Court of Brockton, Massachusetts, reveals that a complaint was made under oath by one Anthony W. Eudaco that, on January 26, 1926, in the County of Plymouth, the defendant:

> "did by speech, advise, counsel, and incite the overthrow, by force and violence, the Government of the Commonwealth of Massachusetts."

In response to a motion by the defendant for a bill of particulars specifying:

> "1. The exact time and place where the alleged utterances charged in the complaint, were made.

> 2. The language alleged to have been used by the defendant constituting the complaint charge."

The commonwealth filed the following particulars on February 18, 1926:

"COMMONWEALTH OF
MASSACHUSETTS

Plymouth SS  District Court
February 18, 1926  of Brockton

Commonwealth

vs

Anthony Bimba

BILL OF PARTICULARS.

The commonwealth alleges that the defendant did violate G.L. Chapter 264, section 11, by saying in substance in Lithuanian language, a translation of which in English is as follows:

Here we are organizing Lithuanians among Lithuanians, the Poles among the Polish and the Jews among the Jewish, etc., to overthrow the American Capitalistic Government by a revolution in the same way they did in Russia and establish the same kind of Government that they now have in Russia. Workers are out of employment/they are being persecuted here in America and now is the time to organize.

We don't believe in the ballot. We don't believe in any form of government but the Soviet form and we shall establish the Soviet form of Government here. The red flag shall fly on the capitol in Washington and there will be one on the Lithuanian Hall in Brockton.

By its attorney,

s/ Manuel Ruh

(Seal of) A True Copy, Attest:
(District)
(Court of) George M. Covett
(Brockton) Clerk of said Court"

The charge of blasphemy was dismissed. But on March 2, 1926, after a trial before the District Court of Brockton, Plymouth County, Massachusetts, the defendant was found guilty of the

charge of "Inciting Overthrow of Government" and fined the sum of $100. He appealed from the judgment of conviction to the Superior Court. Before the defendant was admitted to citizenship on April 1, 1927 and had received certificate of naturalization No. 2489530, the District Attorney on March 21, 1927, recommended the entry of nolle prosequi:

"Commonwealth of Massachusetts.

Plymouth, ss.      Superior Court.

COMMONWEALTH

vs.

Anthony Bimba

I hereby recommend that an entry of nolle prosequi be entered in the above entitled action for the following reasons:

Evidence very conflicting.

Very serious question of law whether statute was violated.

Interests of public justice do not require further prosecution of this case.

Dudley P. Rannus

Assistant District Attorney

March 2, 1927

For the reasons above stated I will no further prosecute this complaint.

Winfield M. Wilbar

District Attorney.

A true copy. Attest:

Arthur T. Murphy

Asst. Clerk."

In short, the pertinent events took place in the following sequence:

(1) On February 3, 1926 the defendant was arrested and charged with "Blasphemy" and "Inciting Overthrow of Government" [of the Commonwealth of Massachusetts].

(2) On March 2, 1926, after a trial before the District Court of Brockton, Massachusetts, the charge of "Blasphemy" was dismissed but defendant was convicted of "Inciting Overthrow of Government" and fined the sum of $100.00. At some undetermined time thereafter an appeal was taken from this conviction.

(3) On December 9, 1926 the defendant filed a petition for naturalization and swore under oath that he had never been arrested or charged with the violation of any law, or convicted of any crime.

(4) On March 21, 1927 defendant's conviction was disposed of by an entry of nolle prosequi.

(5) On April 1, 1927 defendant was admitted to citizenship.

(6) On September 16, 1963 the complaint in the instant proceeding was filed.

*The Affidavit*

Section 340 provides that it shall be the duty of the United States Attorney, "upon affidavit showing good cause therefor," to institute a denaturalization proceeding. Basing his contention upon this statutory requirement, the defendant alleges that this court is without jurisdiction in the instant action because the affidavit herein fails to show "good cause." Before looking to the judicial interpretation of this requirement, it should be noted that the affidavit in question sets forth the following facts:

(1) Defendant, Anton Bimba, filed a petition for naturalization on December 9, 1926 and was admitted to citizenship on April 1, 1927;

(2) that said Anton Bimba alleged under oath at the preliminary examination conducted at the filing of his petition that he had never been arrested or charged with the violation of any law, or convicted of any crime;

(3) that said sworn statements were false and untrue in that Anton Bimba had in fact been arrested on or about February 3, 1926 and charged with the commission of two crimes at Brockton, Massachusetts, to wit: "Blasphemy" and "Inciting Overthrow of Government"; that the charge of "Blasphemy" was dismissed but that Anton Bimba was found guilty on March 2, 1926, after a trial held before the District Court of Brock-

ton, Massachusetts, on the charge of "Inciting Overthrow of Government" and fined the sum of $100.00; that thereafter an appeal was taken and the case disposed of by an entry of nolle prosequi;

(4) that said Anton Bimba intentionally and deliberately concealed material facts and made willful misrepresentations in order to, and in fact, did prevent the making of a full and proper investigation of his good moral character, attachment to the principles of the Constitution of the United States, and other qualifications for citizenship, and procured naturalization in violation of law, and that

(5) said Anton Bimba did not possess the necessary qualifications in that he was not a person of good moral character during the period required by law since he gave false testimony under oath and thereby procured naturalization in violation of law.

■■ This affidavit, which is a prerequisite to the maintenance of a denaturalization suit, United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L. Ed. 964 (1956), should reveal facts offered to establish some of the premises from which the conclusion is drawn, by the United States Attorney, that section 340 proceedings are warranted. United States v. Minerich, 250 F.2d 721 (7th Cir. 1957). Although the affidavit must set forth evidentiary matters showing good cause for cancellation of citizenship, United States v. Zucca, supra, it need not be based upon the personal knowledge of the affiant, Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958); nor embrace the testimony of prospective witnesses. Nowak v. United States, 238 F.2d 282 (6th Cir. 1956), rev'd on other grounds, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958). The Seventh Circuit has stated that:

"[f]rom such an affidavit an experienced judge should be able to detect a United States attorney's reckless categorization or noncritical selection of candidates for denaturalization, and we think that is all Con-

gress intended by the procedural safeguard. Certainly a pre-trial preview of the complete array of evidentiary facts which the government intends to establish through evidence, parol and documentary, at the trial is far in excess of the showing called for by Congress. * * * These affidavits are the means by which courts can ascertain whether the United States Attorney's conclusion about instituting denaturalization proceedings dictated what the reasoning ought to be, in contradistinction from an affidavit showing the basis for reasoning which determined what his conclusion in that regard shall be." 250 F.2d at 725–726.

As shown above, the affidavit herein alleges the willful concealment of a material fact, i. e., defendant's previous arrests and conviction, his sworn denial of any such occurrences, and the particular facts of his criminal record which show his sworn statement to be false. Affidavits which have made substantially the same allegations have consistently been upheld. In United States v. Miller, 152 F.Supp. 27, 29 (N.D.Cal.1957), the court observed that the affidavit there in question:

"alleges that defendant falsely concealed her membership in the Communist Party when she made her application for citizenship and in giving testimony before naturalization examiners. It sets forth the specific statements made by defendant under oath and then alleges that these statements were false, and that defendant was in fact a member of the Communist Party during the time involved in the statements. In short the affidavit sets forth specifically the statements made by defendant which are alleged to be false, alleges membership in the Communist Party by defendant for a specific period of time, and further alleges a wilful concealment of that fact by defendant during her naturalization proceedings."

The court then concluded that:

"These allegations are both evidentiary and disclose to defendant the basis of the charges made in the complaint for cancellation of her citizenship. This is sufficient to meet the test of Zucca, supra."

■ Similarly, in United States v. Chandler, 142 F.Supp. 557 (D.Md.1956), the court recognized the sufficiency of an affidavit which alleged that: (1) the defendant was arrested and charged with specific violations of law on specific dates; (2) that the defendant was an active member of the Communist Party; (3) that said Party teaches the overthrow by force or violence of the Government of the United States; (4) that the defendant was aware that the decisions of the Party were binding upon him, whether or not such decisions were contrary to the laws of the United States; (5) that the defendant intentionally and deliberately made false statements during the naturalization proceedings in order to prevent the making of a full and proper investigation of his qualifications for citizenship and in order to conceal his lack of attachment to the principles of the Constitution and to procure naturalization in violation of law. Two cases in this Circuit have upheld affidavits substantially similar to that now before this court. See United States v. Lucchese, 247 F.2d 123 (2d Cir. 1957), rev'd on other grounds, 356 U.S. 256, 78 S.Ct. 713, 2 L.Ed.2d 741 (1958); United States v. Costello, 142 F.Supp. 290 (S.D. N.Y.1956). The affidavit of good cause which is now under consideration gives the defendant all the evidentiary facts upon which the Government's case rests and therefore sufficiently apprises him of the facts and reasons upon which his citizenship is sought to be revoked. In this respect it is clearly distinguishable from the affidavit found to be inadequate in United States v. Salomon, 231 Fed. 928 (5th Cir. 1916). Cf. United States v. Richmond, 17 F.2d 28 (3d Cir. 1927). Defendant misconstrues the purpose of the required affidavit when he alleges that "no evidence is set forth to show that the facts concealed were material; or to warrant the conclusion that the representations made by defendant were willful"; such may be the case but the omission thereof is not fatal. In response to an analogous contention, the Court of Appeals for this Circuit has stated that although it is "quite in favor of enforcing the statutory provisions to insure good faith in these prosecutions * * * it does not seem normal for the Government to show its details of proof in a preliminary good cause affidavit, and we do not see a sound purpose to cause us to read such a requirement into the modest statutory provisions." United States v. Matles, 247 F.2d 378, 381 (2d Cir. 1957), rev'd per curiam on grounds not stated, 356 U.S. 256, 78 S.Ct. 712, 2 L.Ed.2d 741 (1958).

## Does the Complaint State a Claim Upon Which Relief Can Be Granted?

■ In Chaunt v. United States, supra, the Supreme Court established the proposition that in order to successfully prosecute a section 340 proceeding:

"the Government has * * * to show by 'clear, unequivocal, and convincing' evidence either (1) that facts were suppressed which, if known, would have warranted denial of citizenship or (2) that their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." 364 U.S. at 355, 81 S.Ct. at 150–151, 5 L.Ed. 2d 120.

Defendant correctly urges, therefore, that his allegedly willful misrepresentation above, even if proven, cannot result in denaturalization under Chaunt; he has failed, however, to note the further allegations of the complaint and to recognize the crucial factual distinctions between the Chaunt case and the instant action. In Chaunt the arrests which the defendant had failed to disclose:

"were not reflections on the character of the man seeking citizenship. The statute in force at the time of his (and of defendant Bimba's) nat-

uralization required that 'he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States' during the previous five years. (45 Stat. 1513–1514, now 8 U.S.C.A. § 1427(a)). *These arrests were made some years prior to the critical five-year period.* They did not, moreover, involve moral turpitude within the meaning of the law. * * * No fraudulent conduct was charged. They involved distributing handbills, making a speech, and a breach of the peace. In one instance he was discharged, in one instance the prosecution was 'nolled,' and in the other (for making a speech in a park in violation of city regulations) he apparently received a suspended sentence. *The totality of the circumstances surrounding the offenses charged makes them of extremely slight consequence.* Had they involved moral turpitude *or acts directed at the Government, had they involved conduct which even peripherally touched types of activity which might disqualify one from citizenship, a different case would be presented.* On this record the nature of these arrests, the crimes charged, and the disposition of the cases do not bring them, inherently, even close to the requirement of 'clear, unequivocal, and convincing' evidence that naturalization was illegally procured within the meaning of § 340(a) of the Immigration and Nationality Act." 364 U.S. at 353–354, 81 S.Ct. at 149–150 (Emphasis added.)

Moreover, in Chaunt the Court found that, on the particular facts of that case, any undesirable affiliation that the defendant therein had had with the Communist Party was disclosed to the Government by the defendant at the time of his application and that the Government, therefore, was not precluded from conducting an investigation which might possibly have led to facts warranting denial of citizenship.

The facts in Chaunt are totally different from those in the instant case. The arrests and conviction which defendant is alleged to have concealed willfully took place within little more than a year prior to defendant's naturalization, whereas in Chaunt they occurred several years prior to the critical five year period. Secondly, although there is little doubt that the totality of circumstances surrounding Bimba's arrest for "Blasphemy" makes it of extremely slight significance, his arrest for as well as his conviction of "Inciting Overthrow of Government" relate to an act directed at the Government, a fact which, according to Chaunt, presents a different case. Finally, there is no evidence in the instant case which would indicate that the defendant did not, by his nondisclosure of these arrests and conviction, preclude the Government from making an investigation which might possibly have led to facts warranting a denial of citizenship.

Indeed, when these factual distinctions are considered along with the subsequent construction given the Chaunt case and the present posture of the instant case, it is apparent that defendant's objections based upon the Chaunt rule are unfounded. Initially, it must be noted that defendant has misconstrued the scope of his present motion to dismiss the complaint; it is not incumbent upon the Government to allege therein each of the facts upon which it bases its case —such allegations, and whatever proof in support thereof the Government can present, must await the trial.

"On motions such as these, the allegations of the complaint must be taken as true and the complaint must be construed in the light most favorable to the plaintiffs. * * * Furthermore, the complaint need but state a claim upon which relief can be granted and if it does so, even absent the statement of facts sufficient to constitute a cause of action, it will survive a motion to dismiss under F.R.Civ.P. 12(b) (6). * * *

Nor should a complaint fall before such an assault unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts that might be proven in support of their claims." Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701, 704 (S.D. N.Y.1951).

See also, Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944); K. S. Corp. v. Chemstrand Corp., 198 F.Supp. 310, 314 (S.D. N.Y.1961). Under these well established principles, can it be said that the instant complaint, construed in the light most favorable to the Government and under any state of facts that may be proven, fails, beyond a certainty, to state a claim upon which relief can be granted? Can it be said, notwithstanding the subsequent nolle prosequi, that defendant's arrest and conviction for "Inciting Overthrow of Government" was not, in and of itself, so indicative of his nonattachment to the principles of the Constitution of the United States as to warrant a denial of citizenship? Viewed most favorably to the Government, it would seem that this crime is precisely that type which would have warranted denial of citizenship had the existence thereof been disclosed. E. g., Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958); United States v. Swelgin, 254 F. 884 (D.Or.1918); United States v. Chomiak, 108 F.Supp. 527 (E.D.Mich.1952), aff'd, 211 F.2d 118 (6th Cir.), cert. denied, 348 U.S. 817, 75 S. Ct. 28, 99 L.Ed. 644 (1954); United States v. Sweet, 106 F.Supp. 634 (E.D. Mich.1952), aff'd, 211 F.2d 118 (6th Cir.), cert. denied, 348 U.S. 817, 75 S. Ct. 28, 99 L.Ed. 644 (1954).

Even more important in the instant case, however, is the effect of the Government's allegation, in paragraph Sixth of its complaint, that the

"[d]efendant intentionally and deliberately concealed material facts and made wilful misrepresentations in the proceedings leading to his naturalization * * * in order to, and he did, *prevent the making of a full and proper investigation of his good moral character, attachment to the principles of the Constitution of the United States, and other qualifications for citizenship;* induce the Naturalization Examiner to make an unconditional recommendation to the Court that the petition be granted; *preclude inquiry by the Court concerning his qualifications for citizenship; and procure naturalization in violation of law.* (Emphasis added.)

Taking this allegation in the light most favorable to the Government, it does not "appear[s] to a certainty that plaintiff . . . [is] . . . entitled to no relief under any state of facts that might be proven in support of [its] . . . claims." Joseph v. Farnsworth Radio & Television Corp., supra. Indeed, such an allegation, if proven and supported by the proper facts, could well qualify under the second aspect of the test enunciated in Chaunt v. United States, supra; i. e., that the disclosure of defendant's previous arrests and conviction "might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." 364 U.S. at 355, 81 S.Ct. at 151. The Court of Appeals for this Circuit, in the post-Chaunt case of United States v. Oddo, 314 F.2d 115, 118 (2d Cir.), cert. denied, 375 U.S. 833, 84 S.Ct. 50, 11 L.Ed.2d 63 (1963), has held that "[f]ailure to disclose a record of prior arrests, even though none of those arrests by itself would be a sufficient ground for denial of naturalization, closes to the Government an avenue of enquiry which might conceivably lead to collateral information of greater relevance. United States v. Montalbono, 236 F.2d 757 (3 Cir.), cert. denied, 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244 (1956); Corrado v. United States, 227 F.2d 780 (6 Cir., 1955), cert. denied, 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455 (1956)." The court has no knowledge as to whether, upon the trial, the Government can sustain the burden of proof required by Chaunt v. United States, supra. At this juncture, however, it is sufficient that the

Government has alleged that defendant's nondisclosure prevented a full and proper investigation of his qualifications for citizenship.

Defendant also urges, in what appears to be an argument addressed primarily to the sufficiency of the affidavit of good cause, that the Government has failed to allege that his arrests and conviction were, in fact, lawful. While this court has already recognized the sufficiency of the affidavit, it deems it advisable to consider this argument to the extent that defendant relies thereon in his challenge to the complaint. In essence, defendant urges that, since his arrest for "Blasphemy" was subsequently dismissed and his arrest and conviction for "Inciting Overthrow of Government" ultimately disposed of by the entry of a nolle prosequi, neither had been a valid arrest. He concludes that, since the Government has failed to allege either in its affidavit or complaint that such arrests were valid, it has failed to establish its case under the rule announced by the Third Circuit in United States v. Kessler, 213 F.2d 53 (3d Cir. 1954).

In that case, however, the court was faced with a totally distinguishable set of facts. There the Government alleged that the defendant had been arrested seventeen times on a charge of "Obstructing the Highway" and had failed to disclose such arrests in applying for citizenship. Crucial to the court's determination that the Government had failed to prove its case was the fact that these arrests were unlawful under state law, since there was then no such crime; moreover, each time the defendant had appeared before a magistrate, the magistrate had instructed her that there was no such crime and had then proceeded to dismiss the charge. It was quite permissible, therefore, to conclude that the defendant had not willfully misrepresented that she had never been arrested since, under those circumstances, a layman could plausibly reach such a conclusion. It would seem that the Court of Appeals for this Circuit, in the case of United States v. Oddo, supra,

314 F.2d at 117, has placed the Kessler case in its proper perspective:

"Appellant advances two arguments which seek to mitigate the significance of his failure to disclose his record of arrests. The first, based upon the in banc decision of the Court of Appeals for the Third Circuit in United States v. Kessler, 213 F.2d 53 (3 Cir., 1954), is that the duty of an applicant for naturalization to disclose his record of arrests does not include an obligation to disclose 'false arrests.' Although the Kessler case so held, it did so in a factual situation importantly different from the present. The applicant in that case had been arrested seventeen times for obstructing the highway, a crime 'unknown to the law of Pennsylvania,' 213 F.2d at 56, and had been discharged each time by the same magistrate who had each time informed her 'that she had committed no crime cognizable at law.' Id. at 58. These circumstances were held to preclude a finding that the applicant had denied her record of arrests with knowledge that her denial was false and in a willful and deliberate attempt to deceive the Government. *Assuming in appellant's favor that Kessler was correctly decided*, Oddo's assertion that his arrests were either of a trivial nature or the result of arbitrary action by the police does not bring him within its rationale; he has presented no evidence that he was arrested for crimes which do not exist." (Emphasis added.)

Defendant alleges that it is the Government's burden, upon its affidavit or complaint, to "show concretely—and not speculatively—that the testimony was false in that there had been a valid arrest linked to a violation of an extant law." The court must disagree. There is nothing in the record now before this court to indicate that defendant's arrests were invalid or that he was under the same

misapprehension as the defendant in the Kessler case when he testified that he had never been arrested or convicted. Defendant herein places great reliance upon the subsequent nolle prosequi of his "Incitement to Overthrow Government" conviction; it must be noted, however, that at the time he testified that he had never been arrested or convicted, his conviction on this charge still stood—entry of the nolle prosequi did not take place until more than three months *after* his sworn misrepresentation. Perhaps defendant can argue this point more persuasively after trial; at this stage of the proceedings, however, the court finds no merit to this contention.

Finally, defendant attacks the sufficiency of the complaint on the grounds that it fails to allege either the commission of a legal wrong by the defendant or the suffering of a legal injury by the Government. It is clear, however, that the complaint does state the commission of a legal wrong by the defendant; it alleges that he intentionally and deliberately concealed material facts, made willful misrepresentations under oath, precluded a full investigation of his qualifications for citizenship, and procured naturalization in violation of law. In support of his contention that the complaint must be dismissed owing to its failure to state the presence of legal injury to the Government, defendant places heavy reliance upon the decision of the Court of Appeals for the Fifth Circuit in United States v. Salomon, supra. Once again, however, the defendant has overlooked the crucial factual distinctions between the Salomon case and the instant action. In Salomon the sole ground upon which the Government sought revocation of citizenship was the fact that defendant, contrary to statutory requirement, had been granted naturalization on the same day that his petition had been filed. No fraud was charged therein and the Government did not controvert the fact that petitioner was otherwise entitled to be admitted to citizenship. On those facts the court held:

"The remedy given by the statute is the means provided for protecting the right of the government to contest applications for naturalization and for excluding from citizenship those who, under the law, are not entitled to the privilege. The statute does not indicate a purpose to give the remedy when there has been no injury. The district attorneys are authorized to institute the proceedings only 'upon affidavit showing good cause therefor.' The affidavit upon which this suit was instituted *amounted to nothing more than an assignment of error of law apparent upon the face of the naturalization proceedings. It states no fact from which it may be inferred that a ground for contesting the application existed, or that the result might have been different if all the requirements of the statute had been complied with in the naturalization proceedings.*" 231 Fed. at 929. (Emphasis added.)

The instant case presents facts which are similarly distinguishable from the mere irregularities which were evident in United States v. Rossi, 299 F.2d 650 (9th Cir. 1962) (where the defendant had procured citizenship under his brother's name merely in an effort to avoid immigration quotas), and United States v. Richmond, supra (where revocation of citizenship was sought solely because the presiding judge had stepped from the courtroom while the defendant was offering proof of his qualifications to the clerk). In the instant case the Government does not rely upon a mere irregularity or error of law; it alleges that the defendant made a willful misrepresentation of material facts, thereby precluding a full investigation of his qualifications and securing citizenship in violation of law. As noted earlier in this opinion, these facts, if proven, may well justify a revocation of citizenship.

This court is aware of the grave consequences which this suit poses to defendant Bimba and the appropriately heavy burden of proof which the Govern-

ment faces. However, at this stage of the proceedings, defendant's contentions are without merit. Accordingly, his motion to dismiss the complaint is denied.

Settle an order consistent herewith on or before ten (10) days from the date hereof.