**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Adel SHESHTAWY,
Defendant-Appellant.**

**No. 81–1430.**

United States Court of Appeals,
Tenth Circuit.

Aug. 22, 1983.

---

Peter D. Williamson and Spencer H. Gardner of Williamson & Gardner, Houston, Tex. (E. Vance Winningham, Jr. and Mike Moore of Oklahoma City, Okl., with them on the brief), for defendant-appellant.

Robert Kendall, Jr., Dept. of Justice, Washington, D.C. (Lauri Steven Filppu and Eb F. Luckel, Criminal Div., Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellee.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

Adel Sheshtawy, a naturalized citizen of the United States, appeals a district court decision to revoke his citizenship and cancel his certificate of naturalization.

The appellant initially sought naturalization in 1978; however, his naturalization was delayed because his character witnesses had not known him for the requisite period of time. Approximately three weeks before the appellant's rescheduled naturalization hearing, he was arrested and charged with concealing stolen property. Shortly after the arrest, he received a standard form questionnaire from the Immigration and Naturalization Service, which he was required to fill out in order to update the information on his application for a petition for naturalization. The third question asked whether he had ever been arrested, which he falsely answered "no." As instructed, the appellant took the form with him to his naturalization hearing, where he turned it in to a naturalization examiner and was ultimately naturalized. About six weeks later, the state trial judge, at the end of the preliminary hearing, dismissed the criminal charges against the appellant, finding that no crime had been committed. At some later date, the INS discovered that the appellant had been arrested, and these proceedings were commenced.

In revoking the appellant's citizenship, the trial court held that disclosure of the arrest would have caused a substantial delay in the appellant's naturalization pending investigation, that the appellant willfully answered the arrest question falsely in order to avoid the consequences that a true answer might have had on his naturalization thereby facilitating his acquisition of citizenship, and that the defendant willfully misrepresented and concealed a material fact.

This case is squarely governed by principles established in *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). There, the Supreme Court held that the government carries a heavy burden when it seeks to revoke citizenship under 8 U.S.C. § 1451(a) (1976) for the willful misrepresentation or concealment of a material fact.[1] For a fact to be "material," the

---

1. Section 1451 provides as follows:
   It shall be the duty of United States attorneys ..., upon affidavit showing good cause therefor, to institute proceedings ... for the purpose of revoking and setting aside the order admitting [any] person to citizenship

and cancelling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation ...

government must "show by 'clear, unequivocal, and convincing' evidence either (1) that facts were suppressed which, if known, would have warranted denial of citizenship or (2) that their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." *Id.* at 355, 81 S.Ct. at 150.

■ In this case, the government made no claim that the arrest itself would have resulted in a denial of citizenship. Nor did the government attempt to show that an investigation would have turned up other facts warranting a denial of citizenship. Rather, it argues that *Chaunt* requires only that disclosure might have led to the discovery of disqualifying facts—that is, that an investigation would have been undertaken.[2] Thus, the substance of the government's position, which the trial court accepted, is that the test for materiality

> is not whether the truthful answer in itself, or the facts discovered through an investigation prompted by that answer, would have justified a denial of citizenship. It is whether the falsification, by misleading the examining officer, forestalled an investigation which *might have resulted* in the defeat of petitioner's application for naturalization.

*Id.* at 357, 81 S.Ct. at 151 (Clark, J., dissenting) (emphasis supplied). This test, however, was the one espoused by the *Chaunt* dissent and rejected by the majority.

In *Fedorenko v. United States,* 449 U.S. 490, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981), the Court avoided reviewing a similar construction of the *Chaunt* test by the Fifth Circuit, *see United States v. Fedorenko,* 597 F.2d 946, 951–52 (5th Cir.1979), by choosing to resolve the case on a different theory, *see* 449 U.S. at 508–16, 101 S.Ct. at 748–52. In his concurring opinion, however, Justice Blackmun carefully reviewed the *Chaunt* test and concluded that it requires that the government demonstrate the existence of actual disqualifying facts—facts that themselves would have warranted denial of petitioner's citizenship. *Id.* at 523–26, 101 S.Ct. at 755–57 (Blackmun, J., concurring).[3] While there has been substantial disagreement over the meaning of *Chaunt,*[4] its characterizations by Justice Blackmun appear to us to be correct, and until *Chaunt* as thus interpreted has been rejected or overturned by the Supreme Court, we must follow it.

At issue in these cases is a balance of the importance of securing the stability and security of naturalized citizenship against the risk, arguably posed by *Chaunt,* of encouraging lying in connection with applications for citizenship. Our reading of *Chaunt* is unlikely to provide persons who have in their background a clearly disqualifying experience with additional incentive to lie, since their citizenship would be revoked even under our interpretation of *Chaunt.* Nor does *Chaunt* encourage persons with no doubtful experiences in their lives to lie. The only group possibly affect-

---

8 U.S.C. § 1451(a)(1976). The Court has read both the willfulness and materiality requirements as applying to both concealments and misrepresentations. *See, e.g., Fedorenko v. United States,* 449 U.S. 490, 493, 101 S.Ct. 737, 740, 66 L.Ed.2d 686 (1981).

2. There is evidence in the record that had the INS known of the appellant's arrest, it would have delayed the naturalization decision and conducted an investigation that would have consisted of a tape-recorded interview with the appellant, an examination of the police reports, and probably a recommendation that the investigative department make a complete check of the appellant's moral character.

3. Justice Stevens' view of the *Chaunt* test substantially coincides with that of Justice Blackmun. He reads *Chaunt* as requiring that dis-

closure would have led to an investigation, that a disqualifying circumstance actually exist, and that it would have been discovered in the investigation. *Fedorenko,* 449 U.S. at 537, 101 S.Ct. at 762 (Stevens, J., dissenting). Thus, although the Court declined to follow what is essentially the version of *Chaunt* for which the government argues on this appeal, only two of the justices specifically rejected it; and Justice White was the only one who embraced it, *id.* at 528, 101 S.Ct. at 758 (White, J., dissenting).

4. *Compare La Madrid-Peraza v. INS,* 492 F.2d 1297, 1298 (9th Cir.1974) *with United States v. Oddo,* 314 F.2d 115, 118 (2d Cir.), *cert. denied,* 375 U.S. 833, 84 S.Ct. 50, 11 L.Ed.2d 63 (1963).

ed are those who are uncertain whether a particular event would disqualify them from naturalization. We believe the *Chaunt* Court considered this tension and, in effect, concluded that even though there may be some who are encouraged to lie, the importance of putting naturalized citizenship well beyond the danger of unwarranted revocation justifies the adoption of so severe a test.

Since the government does not claim to have established facts that would have warranted denial of the appellant's citizenship, it has not met *Chaunt*'s rigorous test, and revocation under section 1451(a) is not justified.

The government alternatively argues that revocation is justified because the appellant did not meet all of the statutory prerequisites to naturalization. *See Fedorenko,* 449 U.S. at 506, 101 S.Ct. at 747. Only "a person of good moral character" is eligible for naturalization, 8 U.S.C. § 1427(a)(3) (1976), and "one who has given false testimony for the purpose of obtaining any benefits under this chapter" cannot be found to be a person of good moral character, *id.* § 1101(f)(6). Since the appellant lied to gain naturalization benefits,[5] the government argues that he was not of good moral character and therefore ineligible for naturalization.

■ We believe, however, that in denaturalization proceedings, section 1101(f)(6) applies only to false testimony concerning material facts. In *Fedorenko,* the Supreme Court construed a section of the Displaced Persons Act, providing that any person who made a willful misrepresentation in order to gain benefits under that Act—i.e., admission to the United States—should thereafter not be admissible, to apply only to material misrepresentations. 449 U.S. at 507, 101 S.Ct. at 747. The Court simply noted that materiality is required to revoke citizenship for concealments or misrepresentations under section 1451(a) and asserted that "[l]ogically, the same principle should govern the interpretation of this provision of the DPA." *Id.* at 507 n. 28, 101 S.Ct. at 748 n. 28. The wording of section 1101(f)(6) closely tracks that of the statute in *Fedorenko,* and the context within which we are construing the statute—that is, denaturalization of a citizen—and the interests at stake are the same. We therefore conclude that *Fedorenko* compels reading a materiality requirement into section 1101(f)(6) when it is invoked for denaturalization purposes.[6]

■ The remaining question is the legal standard for materiality under section 1101(f)(6). Although the Court in *Fedorenko* refrained from deciding whether the *Chaunt* test for materiality applied to misrepresentations on visa applications, it reaffirmed the test's applicability to determine the materiality of misrepresentations on citizenship applications. 449 U.S. at 508–10, 101 S.Ct. at 748–49. Thus, *Chaunt* is the controlling authority for materiality decisions under section 1101(f)(6), and the government's case under this section must fail for the reasons set out *ante* at 1040–1041.[7]

McWILLIAMS, Judge, dissents.

It is incongruous that Sheshtawy should be rewarded for his dishonesty. If Sheshtawy had answered the question truthfully

---

**5.** The trial court so found, and there is ample evidence in the record to support its finding.

**6.** Both the Second and Third Circuits have refused to read a materiality requirement into § 1101(f)(6); however, both of those cases involved naturalization, not denaturalization, proceedings so that the important interest of the naturalized citizen in retaining his or her citizenship was not implicated. *See Kovacs v. United States,* 476 F.2d 843, 845 (2d Cir.1973); *In re Haniatakis,* 376 F.2d 728, 730 (3d Cir. 1967). They are therefore inapposite in the denaturalization context.

**7.** Our resolution makes it unnecessary for us to decide whether lying on a citizenship application without any accompanying oral representation to a court or naturalization examiner constitutes "false testimony" under § 1101(f)(6). *Compare Phinpathya v. INS,* 673 F.2d 1013, 1018 (9th Cir.1981) (lying on application is not "testimony"), *with Orlando v. Robinson,* 262 F.2d 850, 851 (7th Cir.1959) (lying on application assumed to be "testimony").

and informed the authorities that he had been recently arrested on a charge of concealing stolen goods, such disclosure *might* have been useful in an investigation *possibly leading* to the discovery of other facts warranting denial of citizenship. Such meets the second test in *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), as I read that case. I would affirm the trial court.