Ronald Ingle FORBES, Rhea Alfreda Forbes, Susan Ingle Forbes, Maria Ingle Forbes, Douglas Gordon Ingles Forbes, Robert Stephen Ingle Forbes, Catherine Ingle Forbes, Lawrence Richard Ingle Forbes, Elizabeth Ingle Forbes, Martin Stuart Ingle Forbes, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93–70016.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1994.

Decided Feb. 22, 1995.

Robert O. Wells, Jr., Mikkelborg, Broz, Wells & Fryer, Seattle, WA, for petitioners.

Donald E. Keener, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: POOLE, BRUNETTI, and KLEINFELD, Circuit Judges.

BRUNETTI, Circuit Judge:

The Board of Immigration Appeals (BIA) dismissed the appeal of the Forbes family. It upheld the findings of the Immigration Judge (IJ) that the principle petitioner, Dr. Ronald Ingle Forbes, willfully made a material misrepresentation on his immigration application and was therefore deportable, and that the eligibility of the other family members depended on Dr. Forbes' status. The Forbes family petitions this court to review the BIA's decision.

## I.

Petitioners, a husband, wife, and their eight children, are citizens of Canada. Most of the facts relevant to this case involve the husband, Ronald Ingle Forbes, who was born in Jamaica on October 8, 1921, and is a medical doctor licensed to practice in Canada and the United States. On September 1, 1977, Dr. Forbes, his wife, and seven of the children were granted immigrant visas by the United States Consul in Vancouver, British Columbia based on investments made in the United States. Later that day, they were admitted into the United States at Blaine, Washington as permanent residents. The INS subsequently granted a second preference immigrant visa petition that Dr. Forbes submitted on behalf of his son, Martin Stuart Forbes.

On December 15, 1978, ten Orders to Show Cause were issued charging the family with deportability under section 241(a)(1) of the Immigration and Nationality Act (INA). The orders alleged that Dr. Forbes had been arrested and charged with conspiracy to commit an indictable offense, and was

ineligible to receive a visa as he willfully neglected to tell the consular officer that he had been arrested and criminal charges against him were pending at the time he applied for a visa[;] therefore his visa was procured by fraud or by willfully misrepresenting a material fact.

The orders alleged that the other family members were ineligible because they were admitted based on Dr. Forbes' application.

The basis for the allegation involves an incident that occurred on May 13, 1977. On

March 20, 1977, Dr. Forbes was charged in Vancouver, British Columbia with obtaining credit by false pretenses. He did not appear as scheduled in Vancouver Provincial Court on April 29, 1977 due to illness. A bench warrant was then issued in order to preserve the court's jurisdiction, but Crown Counsel and the court agreed that the warrant would not be executed provided that Dr. Forbes appeared on May 13, 1977. Although Dr. Forbes did appear on May 13, the Sheriff's Department erroneously executed the warrant. Dr. Forbes was apprehended while in the court house. He was booked and finger-printed. The court and Crown Counsel commented that the incident was unfortunate and should not have occurred. On May 24, 1977, Dr. Forbes' attorney sent Dr. Forbes a letter stating that the "arrest was not proper and [was] illegal," and that Crown Counsel "agreed that you should never have been arrested and he apologized on behalf of the Crown."

On August 16, 1979, a stay of proceedings was entered with respect to the criminal charges pending against Dr. Forbes in Canada. Evidence in the record indicates that such a stay is equivalent to a dismissal. *See* Canada Crim.Code § 579.

On his visa application, which he completed on June 9, 1977, Dr. Forbes answered no to question 34, which reads, "Have you ever been arrested, convicted or confined in a prison, or have you ever been placed in a poorhouse or other charitable institution? (*If answer is Yes, explain* )."

At the deportation hearing on February 3, 1979, Dr. Forbes testified that because the arrest was improper and he received an apology, he resolved in his mind that it was not an arrest. He said that he had no doubt that he had not been arrested, but was unsure of how to answer the question on the application. He consulted his attorney, who told him to answer no. He stated, "I had resolved it, that my answer was correct. Not that I was avoiding anything, but that my answer was correct." At the hearing on August 19, 1986, Dr. Forbes answered yes to

the question, "So you had actually been arrested and the Court apologized for the fact that you were arrested, isn't that what happened?"

The government introduced the affidavits of two INS investigators who had spoken with Mr. Burgoon, the U.S. Consular Officer who interviewed Dr. Forbes regarding his application. Mr. Burgoon "stated that he had not been made aware of the criminal proceedings pending against Mr. Forbes when the visa was issued and if he had been the visa would not have been issued at that time."

The Immigration Judge ("IJ") found that Dr. Forbes and his family were deportable. He stated:

I am satisfied ... that Ronald Forbes, either willfully or deliberately, failed to reveal to the Consular Officer that he had been arrested and that charges were pending. I find that the failure of the respondent to truthfully answer the questions on the application for the visa cut off a line of inquiry which could have resulted in a denial of the application for immigrant visas.

The IJ further found that the other family members would not have been eligible for issuance of immigrant visas because their eligibility depended on Dr. Forbes' eligibility. Petitioners appealed to the BIA, arguing that there was no fraud or willful misrepresentation of any material fact in applying for the immigrant visas. The BIA concluded that Dr. Forbes willfully made a material misrepresentation on his application and was therefore deportable. The Forbes family petitions this court to review the BIA decision. We grant the petition because we hold that Dr. Forbes' misrepresentation was not material.[1]

## II.

To find Dr. Forbes excludable under section 212(a)(19) of the INA, the BIA must have found by clear, unequivocal, and convincing evidence that Dr. Forbes procured his visa by willful misrepresentation of a

---

1. Petitioners also argue that Dr. Forbes' wife, Rhea Alfreda Forbes, was admissible in her own right as an immigrant investor, and that Dr. Forbes should have been granted voluntary departure. Because we hold that the family is not deportable, we need not reach these issues.

material fact. *Hernandez–Robledo v. INS,* 777 F.2d 536, 539 (9th Cir.1985). *See* 8 U.S.C. § 1182(a)(19) (1977). We must determine whether there is reasonable, substantial, and probative evidence in the record as a whole to support the BIA's conclusion. *Gameros–Hernandez v. INS,* 883 F.2d 839, 841 (9th Cir.1989). The issue of materiality is a legal question. *Kungys v. United States,* 485 U.S. 759, 772, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988). "In determining whether an alien has procured his visa by fraud or willful misrepresentation of a material fact within the meaning of section 212(a)(19), it is appropriate to examine the circumstances as they existed at the time the visa was issued." *Matter of Healy and Goodchild,* 17 I & N Dec. 22, 28 (BIA 1979).

### A.

■ The requirement in § 212(a)(19) of fraud or willful misrepresentation is satisfied by a finding that the misrepresentation was deliberate and voluntary. *Espinoza–Espinoza v. INS,* 554 F.2d 921, 925 (9th Cir.1977). Proof of an intent to deceive is not required. *Id.* Rather, knowledge of the falsity of a representation is sufficient. *Id.* (citing *Matter of Hui,* 15 I & N Dec. 288 (BIA 1975)).

It is clear from the record that Dr. Forbes was arrested. He acknowledged as much in his own testimony. Moreover, his attorney referred to the incident as an arrest in the letter explaining why it happened. Dr. Forbes contends that any misstatement was not willful because he had strong rational bases for concluding that no arrest had occurred. His argument is essentially that he was not aware of the falsity of his statement when he made it.

The BIA disagreed, noting that Dr. Forbes conceded at his hearing that he had been arrested. It stated:

The question on the visa application is not circumscribed or limited nor does it legitimately permit interpretations of the term "arrest." We find therefore the principal respondent's interpretation of that question unwarranted and unreasonable in view of the unambiguous question contained in the visa application.... By permitting [an explanation of any affirmative answer],

the visa application clearly encompasses an event such as this respondent experienced even if we accept that he honestly believed his interpretation of such event.... Clearly, in light of the broad nature of the visa inquiry on this issue and the fact that a visa applicant is requested to explain an affirmative answer on this issue, it is not credible for the principal respondent to assert that he did not believe an affirmative reply was required in his case.

The BIA also refused to excuse Dr. Forbes' misstatement based on his testimony that he followed his attorney's advice. The BIA assumed that Dr. Forbes testified truthfully regarding his interpretation of the event when he stated that at the time he filled out the application, he had resolved in his mind that the incident was not an arrest. However, it rejected Dr. Forbes' testimony that he believed when he completed the application that his answer to the question was correct.

■ There was substantial evidence supporting the BIA's conclusion that Dr. Forbes' misstatement was willful. It may have given undue weight to Dr. Forbes' acknowledgment at the August 19, 1986 hearing that he had actually been arrested. Dr. Forbes' concession that he was arrested is not necessarily inconsistent with his earlier testimony that, at the time he completed the application, there was no doubt in his mind that he had not been arrested. Nevertheless, Dr. Forbes was apprehended and fingerprinted. He signed a booking sheet. The letter he received from his attorney referred to the incident as an arrest. And the question on the application allows for an explanation. Even if Dr. Forbes believed he had not been arrested because the warrant should not have been executed and the court apologized, the BIA did not err in concluding that he was aware that he should have answered yes.

### B.

■ The test of whether "concealments or misrepresentations [are] material is whether they ha[ve] a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys,* 485 U.S. at 772, 108 S.Ct. at 1547. "A misrepresentation or

concealment can be said to have such a tendency ... if honest representations 'would predictably have disclosed other facts relevant to [the applicant's] qualifications.'" *Id.* at 783, 108 S.Ct. at 1553 (Brennan, J., concurring) (quoting *id.* at 774, 108 S.Ct. at 1548 (opinion of Scalia, J., joined by Rehnquist, C.J., and Brennan, J.)). The government must "produce[ ] evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Id.* at 783, 108 S.Ct. at 1553 (Brennan, J., concurring). *See United States v. Puerta,* 982 F.2d 1297, 1303–04 (9th Cir.1992) (reviewing opinions in *Kungys* and concluding that "Justice Brennan's view of materiality controls").[2]

■ Disclosure of the arrest incident would predictably have revealed the charges pending against Dr. Forbes, which were relevant to his qualifications. Thus the misrepresentation had a natural tendency to influence the decision of the INS. We must therefore determine whether the government's evidence was "sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Kungys,* 485 U.S. at 783, 108 S.Ct. at 1553.

As evidence that the misrepresentation was material, the government introduced affidavits of two INS investigators who spoke with Mr. Burgoon, the consular officer who had interviewed Dr. Forbes. The INS investigators related Mr. Burgoon's description of his policy regarding immigrant visas:

> Burgoon stated that it was his policy to hold issuance of an immigrant visa in abeyance with regard to any applicant who had criminal proceedings pending against him until final disposition of the proceeding was determined. He stated that had he known that criminal proceedings were pending against Forbes at the time the visa was issued he would not have issued the visa until final disposition of the pending proceeding had been made.

Petitioners argue that they would not have been disqualified if Dr. Forbes had disclosed the pending charges. While Mr. Burgoon may have delayed issuance of their visas, he would not have denied the application. They contend that the visas would have been issued when the charges were subsequently dropped. The BIA found that Dr. Forbes' misrepresentation was material because it determined that the Consul would not have issued the visas had it known of the charges. The BIA was "unwilling to conclude ... that the action of the prosecutor in the criminal matter is a dismissal of the charges even if the practical effect may be the same."

We hold that the charges against Dr. Forbes had been dismissed by the time the IJ rendered his decision. The record contains substantial, uncontradicted evidence that under Canada law, the stay of proceedings is equivalent to a dismissal. *See* Canada Crim.Code § 579.[508]. The BIA provided no reason for its unwillingness to accept that the charges were dismissed, there is no evidence that they were still pending, and the government concedes that the evidence indicates the charges were dismissed

Pending charges, without more, do not lead to disqualification under Mr. Burgoon's policy. If Mr. Burgoon had known about the charges, he would have held issuance of the visas in abeyance; he would not have denied them. The government has not suggested that there is any other disqualifying fact that an investigation would have uncovered, so the visas would have been issued after the charges were dropped.

The government contends that because we must examine the circumstances as they existed at the time the visas were issued, the relevant fact is that the Consul would not have issued the visas on September 1, 1977 had it been aware of the pending charges. This argument misses the point. The relevant fact is that the government has presented no evidence "that a statutory disqualifying fact actually existed" on September 1, 1977. *Kungys,* 485 U.S. at 783, 108 S.Ct. at 1553. Indeed, the government did not even produce evidence showing that the INS would have conducted an investigation as a result of the pending charges. The BIA therefore erred in concluding that the misrepresentation was material.

---

2. The BIA decided the instant case two weeks before this court decided *Puerta.* The BIA did

not consider Justice Brennan's narrowing interpretation of the *Kungys* holding.

We draw support for our holding from the Tenth Circuit's decision in *United States v. Sheshtawy*, 714 F.2d 1038 (10th Cir.1983).[3] The facts in *Sheshtawy* are almost identical to the circumstances in the instant case. Sheshtawy was arrested and charged with concealing stolen property shortly before his naturalization hearing. He subsequently filled out an INS form in connection with his application and answered no to a question asking whether he had ever been arrested. Sheshtawy was naturalized, and the charges were later dismissed. *Id.* at 1039. Evidence in the record indicated that if the INS had known of the arrest, it would have delayed its decision and conducted an investigation. *Id.* at 1040 n. 2. The court held that the misrepresentation was not material since the government did not "attempt to show that an investigation would have turned up other facts warranting a denial of citizenship." *Id.* at 1040. Although *Sheshtawy* involved an application for naturalization rather than permanent residence, its holding coincides with the *Kungys* requirement that the government must produce evidence raising an inference that a disqualify fact existed.

The misrepresentation on Dr. Forbes' application was not material. The BIA therefore erred in finding petitioners excludable.

PETITION GRANTED.

---

**3.** The government contends that *Sheshtawy* has been overruled because it relies on *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), and the Supreme Court repudiated the *Chaunt* test for materiality in *Kungys v. United States*, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839. We disagree. Although the Court concluded in *Kungys* that the general language in *Chaunt* was not useful in constructing a standard formulation for materiality, 485 U.S. at 768, 108 S.Ct. at 1545, it did not repudiate the result reached in *Chaunt*. It described the *Chaunt* test as "an adequate explanation of why the misrepresentation in that case was judged not to have had a natural tendency to influence the decision," but determined that the test "does not necessarily facilitate judgment in the infinite variety of other factual patterns that may emerge." 485 U.S. at 771, 108 S.Ct. at 1547. The *Sheshtawy* court applied the *Chaunt* test in a situation that was factually similar to the circumstances in *Chaunt*. *Sheshtawy* is still good law with respect to cases that fit within the facts of that case and *Chaunt*.