# Revocation of Citizenship

The Immigration and Naturalization Service has authority to institute either administrative or judicial proceedings to denaturalize citizens whose criminal convictions disqualified them from citizenship as a matter of law. Whether the proceedings are administrative or judicial, the INS must establish the allegations in its complaint by clear, unequivocal, and convincing evidence.

The INS has no authority to seek denaturalization if the INS examiner had discretion to find that an applicant was of good moral character, and in fact did exercise that discretion so as to find that the applicant was of good moral character, unless the INS establishes in its complaint by clear, unequivocal, and convincing evidence either that the applicant gave false testimony with the intention of obtaining an immigration benefit or that the examiner's decision resulted from the applicant's willful misrepresentation or concealment of a material fact.

The INS may seek denaturalization if the applicant made a false oral statement under oath (regardless of whether the testimony is material) with the subjective intent of obtaining immigration benefits. Alternatively, the INS may seek denaturalization if the applicant procured naturalization by concealment or willful misrepresentation of a material fact. In either case, the INS must prove its complaint by clear, unequivocal, and convincing evidence.

March 3, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
IMMIGRATION AND NATURALIZATION SERVICE

You have asked for our opinion on certain questions that were originally raised by the House Subcommittee on National Security, International Affairs, and Criminal Justice of the Committee on Government Reform and Oversight, in connection with the Immigration and Naturalization Service's ("INS") naturalization program.[1] We begin by outlining the legal principles governing proceedings for denaturalization (or revocation of citizenship). See Parts I–III below. In light of those principles, we then answer the particular questions you have posed. See Part IV below.

## I.

The controlling statute, the Immigration and Nationality Act ("INA") § 340(a), 8 U.S.C. § 1451(a) (1994), reads in relevant part as follows:

---

[1] See Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from the Office of the General Counsel, Immigration and Naturalization Service, Re Request for OLC Opinion, Revocation of Naturalization: "Discretionary Approvals" and Misstatements (Feb. 21, 1997) (the "INS Request").

Following the rule stated long ago by former Attorney General Murphy, this Office ordinarily declines to provide legal opinions in response to requests from Congress, its committees, or its Members, or to other persons or entities outside the executive branch. See Request of the Senate for an Opinion as to the Powers of the President "In Emergency or State of War", 39 Op. Att'y Gen. 343, 347 (1939); see also Office of Legal Counsel — Limitation on Opinion Function, 3 Op O.L.C. 215 (1979). In this case, however, the request for an opinion has come to us from your agency, not from Congress

> It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .[2]

Section 340(a) provides two distinct legal bases for denaturalization or revocation of citizenship. The first permits the INS to seek revocation if the naturalized person has procured citizenship illegally. "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured;' and naturalization that is unlawfully procured can be set aside." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).

Second, revocation is available if the person procured naturalization "by concealment of a material fact or by willful misrepresentation." INA § 340(a), 8 U.S.C. § 1451(a).[3] Denaturalization on this basis "plainly contains four independent requirements: the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988).

Whichever of these two theories the INS pursues in seeking denaturalization, it must prove the allegations in its complaint "by ' "clear, unequivocal, and convincing" evidence which does not leave "the issue in doubt." ' " *Id.* at 781 (citation omitted); *see also id.* at 772; *Fedorenko*, 449 U.S. at 505; *Polites v. United States*, 364 U.S. 426, 435 (1960); *Chaunt v. United States*, 364 U.S. 350, 355 (1960); *Schneiderman v. United States*, 320 U.S. 118, 123, 125 (1943).[4]

Once the United States has met its burden in a judicial denaturalization proceeding, the court must enter an order revoking the naturalization order and can-

---

[2] The provision is undoubtedly constitutional. "The power of Congress to provide for denaturalization of naturalized citizens has long been viewed as an incident of its authority '[t]o establish a uniform Rule of Naturalization,' U.S. Const art 1, § 8, cl 4, and necessary to protect the integrity of the naturalization process . . Conceptually, denaturalization does not fall within the general rule that citizenship can only be lost by voluntary action, because denaturalization is intended to redress errors in the naturalization process that would disentitle the individual to United States citizenship *ab initio* " *Voluntariness of Renunciations of Citizenship Under 8 U.S.C. § 1481(a)(6),* 8 Op O L C 220, 226 n 14 (1984) (citations omitted)

[3] *See Costello v United States,* 365 U S 265, 272 (1961), *Knauer v. United States,* 328 U S 654, 671–74 (1946), *United States v Kowalchuk,* 773 F 2d 488, 494 (3d Cir 1985) (en banc), *cert denied,* 475 U S 1012 (1986).

[4] *See* 4 Charles Gordon et al , *Immigration Law and Procedure* § 100 02[4][d][iv] at 100–38 (1996) (INS' burden is "conceptually not quite as exacting" as proof beyond a reasonable doubt)

celing the certificate of naturalization. *Fedorenko*, 449 U.S. at 518. The court "lack[s] equitable discretion to refrain from entering a judgment of denaturalization." *Id.* at 517.

Although proceedings for denaturalization have traditionally been judicial in character, administrative denaturalization is also permissible in some circumstances. We understand that, if the INS institutes denaturalization proceedings with regard to any of the naturalization cases approved between September 1995 and September 1996 that are currently the subject of a congressional investigation, those proceedings will ordinarily be administrative.

The relevant INA regulation, which was promulgated under the authority of INA § 340(h), *see Revocation of Naturalization*, 61 Fed. Reg. 55,550 (1996) (to be codified at 8 C.F.R. pt. 340),[5] provides a procedure for the reopening of naturalization proceedings by the district director under whose jurisdiction a naturalized citizen resides. The regulation authorizes the INS to "reopen a naturalization proceeding and revoke naturalization in accordance with this section, if the Service obtains credible and probative evidence which: (1) Shows that the Service granted the application by mistake; or (2) Was not known to the Service Officer during the original naturalization proceeding; and . . . (i) Would have had a material effect on the outcome of the original naturalization [proceeding]; and (ii) Would have proven that: (A) The applicant's application was based on fraud or misrepresentation or concealment of a material fact; or (B) The applicant was not, in fact, eligible for naturalization." *Id.* at 55,553–54 (to be codified at 8 C.F.R. § 340.1(a)). Notice of intent to reopen naturalization proceedings "must be served no later than 2 years after the effective date of the order admitting a person to citizenship," *id.* at 55,553 (§ 340.1(b)(1)), i.e., two years after the naturalized citizen has taken the oath of allegiance to the United States. The naturalized person has the opportunity to respond and may request a hearing, *id.* at 55,553 (§ 340.1(b)(3)), and has a right to counsel, *id.* at 55,554 (§ 340.1(b)(5)). The burden of proof in such administrative proceedings — as in judicial denaturalization cases — is on the INS to prove its complaint by clear, unequivocal and convincing evidence.[6] A decision adverse to the naturalized citizen may be appealed administratively, *id.* at 55,554 (§ 340.1(e)), and, if the administrative appeal is also adverse

---

[5] Statutory authority for administrative denaturalization proceedings was enacted in 1990, when Congress vested the Attorney General with the "sole authority to naturalize persons as citizens of the United States." Immigration Act of 1990, Pub. L. No. 101–649, § 401(a), 104 Stat. 4978, 5038, codified at INA § 310(a), 8 U.S.C. § 1421(a) (1994). At the same time, Congress extended to the Attorney General the authority to "correct, reopen, alter, modify or vacate an order naturalizing [a] person" that had previously been vested in naturalization courts. *Id.* § 407(d)(18)(D), 104 Stat. at 5046, codified at INA § 340(h), 8 U S C. § 1451(h) (1994). *See Magnuson v. Baker*, 911 F.2d 330, 335 n.11 (9th Cir. 1990) (construing the predecessor to § 340(h) to grant the naturalization courts "the inherent authority to set aside [naturalization] judgments for any reason cognizable under Federal Rule of Civil Procedure 60."); *see generally Simons v. United States*, 452 F.2d 1110, 1112–14 (2d Cir. 1971) (Friendly, J.) (outlining legislative intent of prior law).

[6] The INS' field guidance explains the Government's burden. *See Implementation Guidance: INA § 340(h); 8 C F.R. § 340: Standards for Issuance of Notice of Intent to Reopen Naturalization Proceedings and to Revoke Naturalization.*

to that individual, he or she may seek judicial review under INA § 310, 8 U.S.C. § 1421. *Id.* at 55,554 (§ 340.1(f)).

## II.

In this Part, we examine revocation of citizenship on the first of the two bases — that naturalization was illegally procured. In Part III below, we turn to the second basis for denaturalization — that naturalization was procured by concealment of a material fact or willful misrepresentation.

As we have noted above, an alien may be naturalized only upon "strict compliance with the . . . 'terms and conditions specified by Congress.'" *INS v. Pangilinan*, 486 U.S. 875, 884 (1988) (quoting *United States v. Ginsberg*, 243 U.S. 472, 474 (1917)). *See also* INA § 310(d), 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this title *and not otherwise*") (emphasis added); *Maney v. United States*, 278 U.S. 17, 22 (1928) (Holmes, J.); *Tutun v. United States*, 270 U.S. 568, 578 (1926) (Brandeis, J.); *Johannessen v. United States*, 225 U.S. 227, 240–42 (1912); *Schneiderman*, 320 U.S. at 161–62 (Douglas, J., concurring); *United States v. Beda*, 118 F.2d 458, 459 (2d Cir. 1941) (A. Hand, J.). The ordinary prerequisites for naturalization are set forth in INA § 316, 8 U.S.C. § 1427 (1994), and include requirements as to lawful residence in the United States,[7] good moral character, attachment to the principles of the United States Constitution, and favorable disposition to the United States. At the time of applying for naturalization, the applicant bears the burden of establishing that he or she possesses the qualifications for citizenship. INA § 316(e), 8 U.S.C. § 1427(e); INA § 318, 8 U.S.C. § 1429 (1994). The standard of proof is whether the applicant has established the necessary facts by a preponderance of the evidence. *See* 8 C.F.R. § 316.2(b) (1997).

The requirement that the applicant be of good moral character is particularly relevant to the questions you have posed. A finding of good moral character is precluded as a matter of law if, within the statutory period required for establishing good moral character, the applicant falls within any of several categories set forth in INA § 101(f)(1)–(8), 8 U.S.C. § 1101(f)(1)–(8) (1994). These legally disqualifying categories include, among others, being an habitual drunkard; deriving one's income principally from illegal gambling; having two or more gambling convictions; and having been confined, as a result of a conviction, to a penal institution within the statutory period for 180 days or more. Of chief relevance here, the disqualifications include being "one who at any time has been convicted of an aggravated felony," INA § 101(f)(8), 8 U.S.C. § 1101(f)(8), or having other

---

[7] Accordingly, naturalization may be revoked for failure to enter the United States lawfully by means of a valid immigrant visa *See, e.g., Fedorenko*, 449 U S at 514–15; *United States v Schmidt*, 923 F 2d 1253, 1257 (7th Cir ), *cert denied*, 502 U S 921 (1991); *Kowalchuk*, 773 F.2d at 492–93

criminal convictions or offenses detailed by the statute, INA § 101(f)(3), 8 U.S.C. § 1101(f)(3), or "one who has given false testimony for the purpose of obtaining any benefits under this Act," INA § 101(f)(6), 8 U.S.C. § 1101(f)(6). In Part II(A) below, we consider disqualifications based on a criminal record; in Part II(B), we turn to disqualifications based on false testimony.

## A.

As we have noted, it is a requirement of being naturalized that the applicant be "a person of good moral character." INA § 316(a)(3), 8 U.S.C. § 1427(a)(3). As a matter of law, no applicant can be found to be "of good moral character" if he or she "at any time has been convicted of an aggravated felony." INA § 101(f)(8), 8 U.S.C. § 1101(f)(8).[8] Similarly, as a matter of law, no applicant is "of good moral character" if he or she has been convicted of, or has admitting to committing, certain other offenses within a specified period of time. INA § 101(f)(3), 8 U.S.C. § 1101(f)(3).[9] Accordingly, should the INS discover that a naturalized person, as a matter of law, had not satisfied the "good moral character" requirement because of disqualifying criminal convictions or offenses that fell within INA § 101(f)(3) or (f)(8), it could seek revocation on the grounds that that person's citizenship was "illegally procured," INA § 340(a), 8 U.S.C. § 1451(a). No statute of limitations applies to a judicial denaturalization proceeding under section 340(a).[10] Nor would the INS be estopped from seeking

---

[8] The definition of "aggravated felony" for this purpose is set forth in INA § 101(a)(43), 8 U S C § 1101(a)(43). "The legality of the [individual's] naturalization must be determined under the applicable provisions of the statutes as they were at the time of his admission to citizenship " *United States v Riela*, 337 F 2d 986, 989 (3d Cir. 1964).

The INS has concluded that aggravated felonies other than murder bar a finding of good moral character as a matter of law only if the conviction occurred on or after November 29, 1990, relying on section 509(b) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat 4978, 5051 (1990) ("IMMACT"), *as amended by* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub L. No. 102-232, § 306(a)(7), 105 Stat 1733, 1751 (1991) ("1991 Technical Amendments"). IMMACT § 509(a) struck out the reference in prior INA § 101(f)(8), 8 U.S C. § 1101(f)(8), to the "crime of murder" as *per se* disqualifying, and inserted instead the more general term "aggravated felony " IMMACT § 509(b), however, made the new disqualification for aggravated felonies applicable only prospectively, *i.e.*, to convictions occurring on or after IMMACT's effective date (November 29, 1990). The 1991 Technical Amendments § 306(a)(7) reinstated a conviction for murder as *per se* disqualifying, regardless of the time of the conviction. Nonetheless, it is the INS' view that an aggravated felony conviction for a crime other than murder, entered at any time before November 29, 1990, would be relevant in the broader determination of whether a person is of good moral character *See* Legal Opinion, INS General Counsel, *Amended definition of "aggravated felony" and the section 101(f)(8) bar to good moral character* at 2 (Dec. 3, 1996)

[9] Most convictions (other than aggravated felonies) bar a finding of good moral character only if the conviction, or the applicant's incarceration or probation, occurred during the statutory period for which the applicant must prove good moral character (which, as a general rule, covers the period of five years preceding the application for naturalization and the interval between the application for naturalization and the naturalization ceremony itself). *Compare* INA § 101(f)(8), 8 U.S C. § 1101(f)(8), *with* introductory text and other paragraphs in INA § 101(f), 8 U S C. § 1101(f). *See also* 8 C.F R § 316.10(b)(1), (2) & (c)(1) (1997).

[10] *See Schneiderman*, 320 U S at 174 (Stone, C.J., dissenting); 4 Gordon et. al, *supra* note 4, § 100.02[1][e] at 100–9. Thus, the Government sought to denaturalize the petitioner in *Costello* in 1952, and again in 1958, although he had been naturalized in 1925. *See Costello*, 365 U.S. at 266–68.

denaturalization if naturalization was illegally procured because INS agents failed to exercise due diligence in examining the application for naturalization.[11]

On the other hand, in reviewing an application for naturalization, the INS examiner has a certain degree of discretion in determining whether the applicant has satisfied the statutory requisites. For example, an examiner may take account of adverse conduct that is outside the statutory period for which good moral character is required to be established. *See* INA § 101(f) (last sentence), 8 U.S.C. § 1101(f), and INA § 316(e), 8 U.S.C. § 1427(e). Although the prior misconduct may justify the examiner in denying naturalization, it does not *require* such a determination. Thus, an examiner could conclude, based on the totality of the facts, that an applicant with such a record had demonstrated ''good moral character'' and was eligible for naturalization. Assuming that that person had satisfied all the other statutory prerequisites and was naturalized, there would be no basis for the INS to seek revocation of citizenship in such circumstances.

Suppose, for example, that an applicant has been convicted of a theft. Assume that the conviction occurred many years before the applicant sought naturalization, that any incarceration was ended before the statutory period (normally 5 years before naturalization), and that the offense was not sufficiently serious to qualify as an aggravated felony. The applicant disclosed the conviction to the examiner. The examiner considered the conviction, but concluded that the applicant had shown sufficient evidence of reformation that the conviction did not prove that the applicant was not currently a person of good moral character. *See* 8 C.F.R. § 316.10(a)(2). Because the conviction would not in this case preclude a finding of good moral character, granting naturalization would be within the discretion of the examiner: the applicant had disclosed the relevant information, and the examiner was satisfied that the applicant was eligible. Although a different examiner, on the same facts, might have found that the applicant did not meet the good moral character requirement, *id.*, there would be no basis for revocation: the facts would show neither that the applicant misrepresented or concealed material facts, nor that the applicant was statutorily ineligible for naturalization.

## B.

As pointed out above, only persons of good moral character are legally eligible for naturalization. INA § 316(a)(3), 8 U.S.C. § 1427(a)(3). An examiner cannot find an applicant to be of good moral character if, during the period for which good moral character is required, the applicant ''has given false testimony for the purpose of obtaining any benefits under [the INA].'' *Id.* § 101(f)(6), 8 U.S.C.

---

[11] *See Fedorenko*, 449 U S. at 517 (court lacks ''equitable discretion'' to decline to enter denaturalization judgment once INS has proven failure to have met statutory requirements for naturalization); *see also Reno v Catholic Social Servs. Inc*, 509 U S. 43, 75–76 (1993) (O'Connor, J., concurring in judgment) *Cf Office of Personnel Management v Richmond*, 496 U S 414, 419–24 (1990) (questioning but not deciding whether estoppel ever lies against the Government)

§ 1101(f)(6). In *Kungys*, 485 U.S. at 779–81, the Supreme Court set forth the elements of this provision.

First, in contrast with the "misrepresentation" and "concealment" provisions of INA § 340(a), 8 U.S.C. § 1451(a), there is no requirement that "false testimony" within the meaning of INA § 101(f)(6) be material.

> The absence of a materiality requirement in [8 U.S.C.] § 1101(f)(6) can be explained by the fact that its primary purpose is not (like [8 U.S.C.] § 1451(a)) to prevent false pertinent data from being introduced into the naturalization process (and to correct the result of the proceedings where that has occurred), but to identify lack of good moral character. The latter appears to some degree whenever there is a subjective intent to deceive, no matter how immaterial the deception.

*Kungys*, 485 U.S. at 780.

Second, "testimony" in the sense in question "is limited to oral statements made under oath . . . . [I]t does not include 'other types of misrepresentations or concealments, such as falsified documents or statements not made under oath.' " *Id.* at 780 (citation omitted).

Third, 8 U.S.C. § 1101(f)(6) "applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits." *Id.*

Finally, "unlike the misrepresentation clause of [8 U.S.C.] § 1451(a), the false testimony provisions of § 1101(f)(6) do not apply to 'concealments.' " *Id.* at 781.

To illustrate how this provision operates, suppose that an applicant gave an INS examiner false testimony under oath on a matter that had no bearing on the applicant's eligibility for naturalization. Even though the truth, itself, would not require denying naturalization, the false testimony might do so, by rendering the applicant disqualified for lack of good moral character. However, denaturalization could not be based on the bare misrepresentation itself. Should the INS seek denaturalization on the basis of "false testimony," it would be required to show, by clear, unequivocal and convincing evidence, that the defendant had given the "false testimony" with the subjective intent of obtaining the benefits of the INA — for example, because the applicant mistakenly believed that the information would preclude naturalization. Making such a showing would often pose substantial proof problems for the INS. *See Kungys*, 485 U.S. at 780 ("[I]t will be relatively rare that the Government will be able to prove that a misrepresentation that does not have the natural tendency to influence the decision regarding . . . naturalization benefits was nonetheless made with the subjective intent of obtaining those benefits.").[12] Moreover, in a decision that the Supreme Court

---

[12] *But see id.* at 807 n 3 (White, J , dissenting) ("[I]t is quite clear that when misrepresentations of fact are made in the process of applying for immigration and naturalization benefits, in a very real and immediate sense those misrepresentations are made 'for the purpose of obtaining' such benefits ").

reversed on other grounds, one court of appeals has further restricted the INS' ability to prevail on a "false testimony" claim by holding that the naturalized individual must have given the challenged oral statements under oath before a *court* or *tribunal*. *See Phinpathya v. INS*, 673 F.2d 1013 (9th Cir. 1981), *rev'd on other grounds*, 464 U.S. 183 (1984).[13]

### III.

The second principal basis on which the INS may seek denaturalization under INA § 340(a), 8 U.S.C. § 1451(a), is that naturalization was procured by "concealment of a material fact" or by "willful misrepresentation." As explained above, denaturalization on the basis of this theory would require the INS to show, under "the unusually high burden of proof in denaturalization cases," *Kungys*, 485 U.S. at 776, that there existed a misrepresentation or concealment that was willful and of a material fact, and that "the naturalized citizen [had] procured citizenship as a result of the misrepresentation or concealment." *Id*. at 767.

Not every misrepresentation or concealment is of a "material" fact. To be "material," the misrepresentation or concealment must be shown to be "predictably capable of affecting, *i.e.*, [having] a natural tendency to affect, the official decision . . . whether the applicant [met] the requirements for citizenship" or, more specifically, "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." *Id*. at 771–72 (Scalia, J., joined by Rehnquist, C.J.); *see also id*. at 783 (Brennan, J., concurring) (joining lead opinion and agreeing with its construction of provision, but writing separately to state view that "a presumption of ineligibility does not arise unless the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed"); *id*. at 801 (O'Connor, J., concurring in part of lead opinion in which this test of materiality was set forth); *id*. at 803 (White, J., agreeing with part of lead opinion in which this test is set forth).[14] Relying on this test, the Supreme Court has held that a misrepresentation of an applicant's date and place of birth in a naturalization proceeding was *not*

---

[13] Apparently, whether the naturalization examiner is a "tribunal" is a question that the Ninth Circuit has not yet addressed *Cf Toquero v. INS*, 83 F 3d 429 (9th Cir. 1996) (not designated as a published precedent).

[14] Commentators have suggested that the various separate opinions in *Kungys*, particularly on the test of materiality of a misrepresentation or concealment, has produced "confusion and uncertainty " 4 Gordon et al , *supra* note 4, § 100,02[3][b] at 100–15 One court of appeals has stated that "[a]fter *Kungys*, . it is no simple task to define the meaning of 'material' under the denaturalization statute The eight Justices who decided *Kungys* (Justice Kennedy did not participate) wrote five separate opinions and offered three distinct tests for determining when a statement is material." *United States v. Puerta*, 982 F 2d 1297, 1302 (9th Cir. 1992). In this court's view, the controlling test is that set forth in Justice Brennan's concurring opinion in *Kungys*, *id* at 1303–04 It understood that test to permit denaturalization only "where false statements are coupled with evidence giving rise to a 'fair inference' of ineligibility " *Id*. at 1304 (quoting *Kungys*, 485 U.S at 783 (Brennan, J , concurring))

We note that the Supreme Court has recently framed the question whether materiality of falsehood is an element of a violation of 18 U.S.C § 1014 in terms of the explanation of "materiality" given in the lead opinion in *Kungys See United States v Wells*, 519 U S 482, 489–90 (1997). It might therefore be argued that the Court has implicitly adopted the definition in the lead opinion

"material" as that term is used in INA § 340(a). *Id.* at 774. "There has been no suggestion that those facts were themselves relevant to [the applicant's] qualifications for citizenship. Even though they were not, the misrepresentation of them would have a natural tendency to influence the citizenship determination, . . . if the true date and place of birth would predictably have disclosed other facts relevant to his qualifications. But not even that has been found here." *Id.*

Thus, not every willful misrepresentation or concealment of an applicant's criminal record is a sufficient basis for denaturalization. In *Chaunt*, the Supreme Court held that a naturalized citizen who had willfully and falsely stated during the naturalization process, in writing and (apparently) orally under oath, that he had never been arrested could not be denaturalized under INA § 340(a). The Court indicated that it would not find the misrepresentation "material" merely because of "the tenuous line of investigation that might have led from the arrests to the [applicant's] alleged communistic affiliations." 364 U.S. at 355. *See also United States v. Sheshtawy*, 714 F.2d 1038 (10th Cir. 1983) (no basis for denaturalization when naturalized citizen had willfully and falsely answered question on INS form regarding prior arrests). *But see Costello v. United States*, 365 U.S. 265 (1961) (naturalized citizen could be denaturalized when he had willfully and falsely stated during naturalization process that his occupation was "real estate" although it was, in fact, that of bootlegger); *United States v. Oddo*, 314 F.2d 115 (2d Cir.) (Thurgood Marshall, J.) (concealment of arrests in naturalization process justified revocation, especially in view of seriousness of charges for which arrests were made), *cert. denied*, 375 U.S. 833 (1963); *United States v. Montalbano*, 236 F.2d 757 (3d Cir. 1956) (misrepresentation of criminal record during naturalization process held to be basis for revocation of citizenship); *Corrado v. United States*, 227 F.2d 780, 783 (6th Cir. 1955) (same as to concealment), *cert. denied*, 351 U.S. 925 (1956). We note also that if the applicant has personally corrected prior misrepresentations or concealments by making a full and complete disclosure later in the naturalization process, that corrective action may remove any basis for revocation. *Cf. United States v. Anastasio*, 226 F.2d 912, 917 (3d Cir. 1955), *cert. denied*, 351 U.S. 931 (1956) (because applicant in second naturalization proceeding disclosed criminal record he had concealed in first proceeding, there was no basis for revocation).

## IV.

In light of these principles, we now turn to the particular questions you have posed.

Question 1. What authority does the Department have to revoke the citizenship of individuals who were naturalized but had criminal convictions for offenses that disqualified them from citizenship as a matter of law?

Answer. The INS has authority to institute either administrative or judicial proceedings to denaturalize citizens whose criminal convictions, *e.g.*, for aggravated felonies, disqualified them from citizenship as a matter of law. (Administrative proceedings are subject to judicial review.) *See* Part II(A) above. Whether the proceedings are administrative or judicial, the INS must establish the allegations in its complaint by clear, unequivocal and convincing evidence. *See* Part I above.

Question 2. What authority does the Department have to revoke the citizenship of individuals who were naturalized but had criminal records for offenses that did not disqualify them from citizenship as a matter of law, but which, in the discretion of the INS examiner, could have supported a conclusion that the individual was not of good moral character?

Answer. The INS has no authority to seek denaturalization if the INS examiner had discretion to find that an applicant was of good moral character, and in fact did exercise that discretion so as to find that the applicant was of good moral character, unless the applicant gave false testimony with the intention of obtaining an immigration benefit, or unless the examiner's decision resulted from the applicant's willful misrepresentation or concealment of a material fact. *See* Parts II and III above.

Question 3. If individuals with convictions described in question 2 could be denaturalized, what legal requirements would have to be observed in the process?

Answer. The elements that the INS would be required to show to establish either false testimony or willful misrepresentation (or concealment) of a material fact are set forth in Parts II(B) and III above. On either theory, the INS would be required to establish its complaint by clear, unequivocal and convincing evidence.

Question 4. Is there any legal basis for revoking citizenship based upon the absence of information in the government's records at the time of the naturalization about whether the individual had been convicted of a per se disqualifying offense or an offense which could have supported a finding of bad moral character?

Answer. The absence of information in INS records at the time of the naturalization is not determinative in a denaturalization proceeding. A certificate of citizenship is illegally procured if the applicant has not strictly complied with all the congressionally imposed prerequisites to the acquisition of citizenship. Hence, if later-discovered evidence establishes that a naturalized citizen failed to satisfy a legally mandatory requirement of naturalization, the INS may institute denaturalization proceedings in that case. Similarly, if the absence of information is attributable to the willful concealment or misrepresentation of a material fact by the applicant, and the applicant procured citizenship as a result of that misrepresentation or concealment, the INS may institute denaturalization proceedings. *See* Parts II and III above.

Question 5. What is the standard for revoking citizenship based on misstatements? Does this standard differ from the standard for denying an application based on a misstatement?

Answer. The INS may seek denaturalization based on a showing that the naturalized person has given false testimony for the purpose of obtaining a benefit under the INA. The INS need not prove the materiality of such false testimony, but must show that the misrepresentation was made with the subjective intent of obtaining immigration benefits. The testimony in question must have been an oral statement made under oath. The INS must prove its complaint by clear, unequivocal and convincing evidence. *See* Part II(B) above.

Alternatively, the INS may seek denaturalization based upon a showing that the naturalized person procured naturalization by concealment of a material fact or by willful misrepresentation. Proof of the materiality of the misrepresentation or concealment is required. Again, the INS must prove its complaint by clear, unequivocal and convincing evidence. *See* Part III above.

The standard for denying an application differs from the standard for denaturalization in two pertinent respects. First, an application for naturalization should be denied if the INS examiner is not satisfied that the applicant has shown, by a preponderance of the evidence, that he or she satisfies the statutory requirements for naturalization. In contrast, the INS bears the burden in a denaturalization proceeding of proving its case by clear, unequivocal and convincing evidence. Second, while the INS examiner has discretion, in some circumstances, to determine whether or not an applicant for naturalization is of good moral character, that discretion does not extend to the denaturalization process. *See* Part II(A) above.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*